James M. RICHARDSON, on behalf of himself and all others similarly situated, Plaintiffs,

v.

HAMILTON INTERNATIONAL CORPORATION et al., Defendants.

Civ. A. No. 71-699.

United States District Court,
E. D. Pennsylvania.

Nov. 3, 1971.

Edward W. Mullinix and Ira P. Tiger, Schnader, Harrison, Segal & Lewis, John F. Wilson, III, Dechert, Price & Rhoads, Philadelphia, Pa., for defendants.

Paul R. Rosen, Pechner, Sacks, Cantor, Dorfman, Rosen & Richardson, Philadelphia, Pa., for plaintiff.

## MEMORANDUM OPINION AND ORDER

VANARTSDALEN, District Judge.

Defendants Hamilton International Corporation (hereinafter Hamilton), Hamilton Life Insurance Company of

America (hereinafter Hamilton Life), the individually named defendant officers and directors of Hamilton and Hamilton Life, and Lybrand, Ross Brothers and Montgomery (hereinafter Lybrand), have moved to disqualify the plaintiff on the ground that Mr. Richardson did extensive legal work for Hamilton Life when he was an associate in the law firm of Schnader, Harrison, Segal & Lewis (hereinafter Schnader firm), which firm formerly represented Hamilton Life and is now representing Hamilton, Hamilton Life, and the individual officers and directors. Lybrand, although not previously represented by Mr. Richardson or the Schnader firm joins in this motion and likewise seeks disqualification as to them.

Mr. Richardson was a shareholder in Hamilton Life and is now a shareholder in Hamilton. He brings this action as a shareholder and derivatively on behalf of Hamilton Life and alleges that Hamilton, its officers and directors, issued and caused to be issued certain allegedly false and misleading proxy statements in connection with the merger of Hamilton Life and Hamilton in 1969 wherein Hamilton became the surviving corporation. It is alleged that as a result of the merger, Hamilton and its officers and directors received excessive amounts of stock in Hamilton to the detriment of the shareholders of Hamilton Life. The claim against Lybrand stems from the fact that they certified the financial statement in the aforementioned proxy statement. Although I have found no case law on the point, I feel that for the purposes of this motion, the allegation of the complaint should be assumed to be true as with a motion for summary judgment. The allegations contained in the motion, together with attached affidavits, are not controverted by pleadings or counter affidavits, so that they will be treated as facts for purposes of this motion.

Different and possibly conflicting policies of the law become apparent. On one hand SEC regulations are designed to protect shareholders of a corporation from wrongdoing and bad faith dealing with the "insiders" of the corporation. Mr. Richardson is a shareholder and is, along with all other shareholders, entitled to that protection. On the other hand, the law seeks to protect attorney-client confidences. If the facts presented compel the conclusion that the attorney-client privilege exists as to these defendants, then the divergent policies of the law must be resolved, and, if possible, harmoniously reconciled.

The operative facts as to the present motion are not seriously disputed. Naturally both sides argue that these facts compel opposite conclusions. Both parties disagree as to the standard to be applied. However, both sides argue that no matter what standard is applied, their respective conclusions are compelled by the facts. I will first enumerate the relevant facts as I find them from the depositions and affidavits which are part of the record. Next I will discuss the applicable standards and apply those standards to the facts.

James M. Richardson, an attorney and member of the Philadelphia Bar, became an associate of the Schnader firm in June of 1955 where he remained until February 1969. Mr. Richardson is presently a partner in the law firm of Pechner, Sacks, Cantor, Dorfman, Rosen & Richardson (hereinafter Pechner firm). The Pechner firm represents Mr. Richardson in the present action. From September 1964 through June 1966, the Schnader firm did legal work for Hamilton Life. Mr. Richardson, as an associate in the Schnader firm, devoted some 669 hours of his time during that period to the affairs of Hamilton Life. Hamilton Life was a client of the Schnader firm during that period and Mr. Richardson was one of the attorneys for Hamilton Life by virtue of his association with the Schnader firm and his work for Hamilton Life. The deposition of Mr. Richardson discloses the nature of the work he did for Hamilton Life.

Mr. Richardson worked with Mr. Meeker, a partner in the Schnader firm, in connection with an intra-state offer-

ing of Hamilton Life stock. Mr. Richardson did the "spade" work in this connection. He conducted interviews with the various officers and directors of Hamilton Life (Dep. pp. 10–11). Some of those same persons are named as individual defendants. He reviewed the files of Hamilton Life, and delved into its formation (Hamilton Life was formed sometime in 1963, Dep. p. 13). Mr. Richardson also reviewed stock subscription agreements and prepared memoranda with respect to registration statements filed by Hamilton Life with the SEC (Dep. pp. 26–27). Those registration statements do not involve the presently contested transactions. Mr. Richardson also did work in preparing the individual officers and directors of Hamilton Life for testimony before the SEC in Washington in 1965 and he also attended some of those hearings (Dep. pp. 27–30).

It is fair to assume that the information available to Mr. Richardson through interviews and records was not generally available to the public, and it was given to Mr. Richardson as an attorney (Dep. pp. 42–43). The exact nature of the information, as opposed to the type of work that Mr. Richardson did, is not known to the court. However, the type of work suggests that Mr. Richardson received confidential information about the entire workings of Hamilton Life up to and through June 1966 and in particular as to its finances, corporate structure and operations. There may be some question as to the exact date when the Schnader firm ceased to represent Hamilton Life. For purposes of this decision, any work done by the Schnader firm for Hamilton Life after the proceedings before the SEC in September of 1965 is of no consequence and will not be considered.

Defendants argue that on these facts, Mr. Richardson gained an "insight" into the operation of Hamilton Life and its officers and directors and as a result of this "insight," obtained while engaged as attorney for Hamilton Life, he should be barred from maintaining this

action. Plaintiff argues that the complaint deals with matters in connection with a 1969 merger arising after termination of the attorney-client relationship and that the matters complained of stem only from that merger and are not connected or in any way related to the previous representation of Hamilton Life by the Schnader firm.

■ No authority need be cited for the proposition that an attorney may not participate in litigation if his participation would violate his ethical duty to a former client. This proposition involves two things: First, the nature of the "ethical duty" to a former client; and second, the facts which would give rise to a possible violation of that duty.

■ Recognizing that the ethical duty of an attorney to his former client may be defined in various ways, in general it is an absolute duty not to disclose or use any confidence revealed to the attorney by the client that may in any manner be detrimental to the former client. The facts which give rise to the alleged violation necessarily vary with each case. The crux of the problem is that the court rarely knows the nature or details of the confidences and to require them to be disclosed even "in camera" for the purposes of a motion to disqualify violates the confidential nature of the communications. Faced with this problem, courts have attempted to fashion standards by which they can judge objectively the circumstances under which an attorney must be disqualified because of the danger of violating the confidential relationship.

■ Where an attorney seeks to represent a party opposing his former client in the same matter, the compelling conclusion is that the ethical duty would be breached, not because the confidences of the former client would necessarily be used, but because of the likelihood that they could be used, e. g., United States v. Standard Oil Company, 136 F.Supp. 345 (S.D.N.Y.1955). What the courts are saying is that when an attorney represents a client, the court will presume the

existence of confidences in connection with that representation.

Where an attorney seeks to represent a party opposing his former client in a different and separate matter from that in which the attorney represented his former client, the courts have looked to the relation between the present matter and the former matter to determine whether confidences which may have been revealed might be used to the detriment of the former client. Again, the courts presume that confidences have been revealed. The attempt to define the relation between the present and former matter is an attempt to determine whether those former confidences could be used to the detriment of the former client in the present matter (Also the attempt to define the relation between the present and former matter is an attempt to determine what confidences may be presumed from former representation).

Having set forth my understanding of the reasons behind the standard, it is appropriate to determine the nature of that standard.

Our starting point is the Canon of Ethics, specifically Canons 6 and 37. They provide in pertinent part as follows:

"6. *Adverse Influences and Conflicting Interests.*

"The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed."

"37. *Confidences of a Client.*

"It is the duty of a lawyer to preserve his client's confidences. This duty outlasts the lawyer's employment, and extends as well to his employees; and neither of them should accept employment which involves or may involve the disclosure or use of these confidences, either for the private advantage of the lawyer or his employees or to the disadvantage of the client, without his knowledge and consent, and even though there are other available sources of such information. A lawyer should not continue employment when he discovers that this obligation prevents the performance of his full duty to his former or to his new client."

■ The court's jurisdiction to enforce these canons is based on its regulatory power over the members of its bar.

The oft quoted case, T. C. Theatre Corp. v. Warner Bros. Pictures, Inc., 113 F.Supp. 265 (S.D.N.Y.1953), provides the insight to the standards here applicable.

" * * * the former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or causes of action wherein the attorney previously represented him, the former client. * * * In cases of this sort the Court must ask whether it can be reasonably said that in the course of the former representation the attorney might have acquired information related to the subject of his subsequent representation. If so, then the relationship between the two matters is sufficiently close to bring the latter representation within the prohibition of Canon 6." T. C. Theatre case, *supra*, pp. 268–269.

In the case of Fleischer v. A. A. P., Inc., 163 F.Supp. 548 (S.D.N.Y.1958), appeal dismissed, 264 F.2d 515 (2nd Cir. 1959), cert. denied, 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959), District Judge Herlands carefully analyzed the controlling principles of law with respect to the disqualification issue. In the *Fleischer* case he noted the aforementioned quote from T. C. Theatre case, *supra*, and pointed out that on appeal in that case the circuit court said inter alia that the aforementioned quote went

to the quantum of proof. Consolidated Theatres v. Warner Bros. Circuit Management Corporation, 216 F.2d 920, p. 924 (2nd Cir. 1954). Judge Herlands goes on to say:

"The courts have generally treated this so-called rule of evidence as creating an 'irrebuttable inference' that confidential information, material and relevant to the instant case, was given to the attorney if the issue and the subject-matter of the former case are substantially related to issues and subject-matter of the present litigation.

\* \* \* \* \* \*

"The stated rule does not shift a burden of disproof upon the attorney sought to be disqualified by his former client. On the contrary, the former client must show that there is a 'substantial relationship' between the issues in the present case and the subject-matter of the former representation. Nevertheless, should the question be close, it should be resolved in favor of the client. As Judge Irving R. Kaufman said in United States v. Standard Oil Company, supra, 136 F. Supp. at page 364:

" 'I agree, that where there is a close question as to whether particular confidences of the former client will be pertinent to the instant case, an attorney should be disqualified to avoid the appearance if not the actuality of evil.' " Fleischer, 163 F. Supp. at 552–553.

Defendants urge that the case of Chugach Electrical Association v. United States District Court for the District of Alaska at Anchorage, 370 F.2d 441 (9th Cir. 1966), compels a different test or standard to be applied. Citing the following language they contend that if the former representation gives the attorney an insight or understanding of subsequent events he may be disqualified from representing the adversary of this former client.

"[3, 4] A likelihood here exists which cannot be disregarded that Mr. Boyko's knowledge of private matters gained in confidence would provide him with greater insight and understanding of the significance of subsequent events in an antitrust context and offer a promising source of discovery. This likelihood is enhanced by recognition of the fact that the allegations of a complaint are not always an accurate appraisal of the relevant period of time in antitrust cases. Discovery and trial proof frequently introduce ramifications rendering earlier events relevant." Chugach at 443.

In Chugach the attorney sought to be disqualified was the former general counsel for C.E.A. The C.E.A. Board of Directors changed and Mr. Boyko (former general counsel) resigned. He subsequently represented Malamska Electrical Association in an antitrust action against C.E.A. In ordering disqualification, the circuit court also pointed out:

"The problem here is not limited to the question whether Mr. Boyko was connected with petitioner as its counsel at the time agreements were reached and overt acts taken,[2] but includes the question whether, as attorney, he was in a position to acquire knowledge casting light on the purpose of later acts and agreements. The policies of the new board majority, pursuant to which the alleged violations occurred, presumably reflected the expressed views and attitudes of the old minority. \* \* \* " (Footnote omitted). Chugach at 443.

On the facts in the Chugach case, I am not convinced that a new standard is being applied. The court is merely finding that confidences could have been reposed in Mr. Boyko not only because of related subject matter, but by virtue of his position as general counsel, which confidences could be used to the former client's detriment.

Neither Mr. Richardson nor the Schnader firm acted as general counsel for Hamilton Life so that any presumption with respect to confidences disclosed by Hamilton Life or its officers and directors must be made if at all from the

relationship of the former representation to the present subject matter of the litigation.

The complaint alleges, inter alia, that in 1968 the named defendants were controlling shareholders in Hamilton Life and Hamilton. Hamilton was a holding company, its sole asset being Hamilton Life stock. It is alleged that Hamilton caused some 40,000 shares of Hamilton stock to be issued without consideration to shareholders of Hamilton, those shareholders being the individual defendants. Hamilton Life then caused to be issued a proxy statement which recommended the merger of Hamilton Life with Hamilton without disclosing the facts as to the 40,000 shares previously issued without consideration.

Other allegations are made and they revolve around the 10(b) (5) SEC violation.

■ The test is whether the issues raised in this complaint are substantially related to the subject matter of the former representation.

Undoubtedly both matters embrace SEC regulations and requirements. This in and of itself may not be enough to require disqualification. However, it does indicate some relationship. The issues raised by the complaint will deal undoubtedly with the stock ownership of the various defendants and their relationship with the corporations involved. Certainly some, if not all, of these questions were raised by the SEC investigation in 1965.

It is conceded that the merger here complained of was not done overnight. It is entirely possible that the plan originated or developed in 1964–1965 and depended on the outcome of the SEC investigation at that time.

■ Mr. Richardson was privy to matter surrounding the SEC investigation. Certain confidences may have been reposed in Mr. Richardson at the time when he, through the Schnader firm, represented Hamilton Life that would be material and relevant to the present litigation. Defendants allege this is so

in effect. If in fact, such is the case, then the matters are substantially related and plaintiff could be disqualified. I feel that it is a close question but to avoid the "appearance of evil" disqualification must be directed.

"No client should ever be concerned with the possible use against him in future litigation of what he may have revealed to his attorney. Matters disclosed by clients under the protective seal of the attorney-client relationship and intended in their defense should not be used as weapons of offense. The rule prevents a lawyer from placing himself in an anomalous position. Were he permitted to represent a client whose cause is related and adverse to that of his former client he would be called upon to decide what is confidential and what is not, and, perhaps, unintentionally to make use of confidential information received from the former client while espousing his cause. Lawyers should not put themselves in the position 'where, even unconsciously, they might take, in the interests of a new client, an advantage derived or traceable to, confidences reposed under the cloak of a prior, privileged relationship.' In cases of this sort the Court must ask whether it can reasonably be said that in the course of the former representation the attorney might have acquired information related to the subject of his subsequent representation. If so, then the relationship between the two matters is sufficiently close to bring the later representation within the prohibition of Canon 6. In the instant case I think this can be said." *T. C. Theatre, supra,* 113 F.Supp. at 268–269.

Several questions remain and as previously stated the possible conflict between the policies of law now exist. It is appropriate to note that at no time was it shown that Mr. Richardson represented the accounting firm of Lybrand. Thus, I can see no reason to disqualify Mr. Richardson as to the action against Lybrand. The complaint states a separate cause of action against Lybrand and,

as such, Hamilton would not be an indispensable party. Therefore, as to Lybrand, disqualification is not appropriate. If Mr. Richardson should, whether intentionally or otherwise, during the course of that litigation reveal an attorney-client confidence reposed in him, such might be cause for separate disciplinary action or possible action for damages by the former client, but it does not go to disqualification.

Does the fact that Mr. Richardson is a shareholder of Hamilton mitigate against disqualification? As a derivative suit, Mr. Richardson seeks to sue on behalf of Hamilton Life for alleged violations of the SEC regulation that the Hamilton Life officers and directors allegedly perpetrated. In my initial discussion, I concluded that Mr. Richardson through the Schnader firm formerly represented the individual officers and directors of Hamilton Life as well as Hamilton Life. Had Mr. Richardson through the Schnader firm represented Hamilton Life alone, it is arguable that his present position would not be inconsistent with the former representation. Marco v. Dulles, 169 F.Supp. 622 (S.D.N.Y.1959), appeal dismissed, 268 F.2d 192 (2nd Cir. 1959). However, since he did represent the individual defendants as well, in what I find to be a substantially related matter, the maintenance of this suit as a derivative action would be a conflict of interest vis-à-vis the individual officers and directors requiring disqualification. The fact that Mr. Richardson is a plaintiff in this action does not mitigate disqualification. If disqualification is appropriate, he certainly cannot do through an attorney what he could not do himself. Norman v. McKee, 431 F.2d 769, p. 772 (9th Cir. 1970).

We come face to face now with the conflicting policies of the law, i. e., to protect shareholders and to protect the confidences of former clients. No amount of legal reasoning can completely harmonize this conflict. There are substantial arguments on both sides; it appears to be a question of priorities.

In a suit of this nature there are other shareholders who are able to bring this suit for the benefit of all shareholders. The sacrosanct nature of the attorney-client privilege dictates that an attorney not disclose the confidences of his client no matter how heinous they may be.

Mr. Richardson became a shareholder of Hamilton Life during the time that he was representing that company. I point this out not to infer that this was improper, but only to show that it may hint of some impropriety, and it is this suggestion of impropriety that I feel must be avoided.

For the above stated reasons, I feel that the policy of the law to protect the attorney-client relationship should take precedence over the policy of the law to protect shareholders of a corporation, under the facts of this case.