469 F.2d 1382
 Fed. Sec. L. Rep. P 93,675
James M. RICHARDSON, Appellant,
v.
HAMILTON INTERNATIONAL CORPORATION et al.
 No. 72-1016.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 25, 1972.
Decided Nov. 17, 1972.
 
 Paul R. Rosen, Pechner, Sacks, Dorfman, Rosen & Richardson, Philadelphia, Pa., for appellant.
 Edward W. Mullinix, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellees.
 Before STALEY, VAN DUSEN and MAX ROSENN, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Circuit Judge.
 
 
 1
 This is an appeal from an opinion and order of November 3, 1971,[1] disqualifying the plaintiff, Mr. James M. Richardson, from maintaining a class action and shareholders' derivative suit against Alexander Hamilton Life Insurance Company of America (hereafter Hamilton Life), its directors, certain of its officers,[2] and its parent company, Hamilton International Corporation (hereafter Hamilton International).[3]
 
 
 2
 Mr. Richardson's complaint asserts that a proxy statement, dated May 19, 1969, proposing a merger between Hamilton Life and Hamilton International was false, misleading, and failed to disclose certain material facts in violation of 15 U.S.C. Secs. 78j(b) and 78n, and Rule 10(b)-5 and Regulation 14a issued thereunder.
 
 
 3
 The defendants claim that former Canons 6 and 37 of the Professional Ethics of the American Bar Association, now embodied in Canon 4 of the new Code of Professional Responsibility,[4] and Rule 11 of the Local Rules of the United States District Court for the Eastern District of Pennsylvania[5] require Mr. Richardson's disqualification as a party plaintiff.
 
 
 
 * * *
 The defendants, in support of their motion, note that Mr. Richardson, while an associate with the law firm of Schnader, Harrison, Segal and Lewis, performed extensive and detailed legal work for Hamilton Life. The record shows that his services commenced in September 1964, when the firm was retained as special counsel for Hamilton Life. At that time, the SEC was investigating whether Hamilton Life had violated the federal securities laws during an intrastate offering in Michigan. Mr. Richardson traveled to Michigan on a number of occasions to visit the Hamilton Life offices, and to conduct detailed investigations into the files of Hamilton Life, and into the personal files of its officers and directors. During these visits the plaintiff also conducted interviews with a number of the officers and director, who are now defendants in the present action.[6] He also reviewed stock subscription agreements and prepared memoranda for registration statements filed by Hamilton Life with the SEC.
 During June of 1965, Mr. Richardson devoted a considerable amount of time preparing Messrs. Owens, Bruce and Safford for an SEC hearing in Washington, D. C. The preparation included the discussion of strategy with those officers and other attorneys in the Schnader firm.[7]
 In October of 1965 the SEC issued "An Order for Public proceedings and Notice of Hearing Pursuant to Sections 15(B), 15(A) and 19(A) of the Securities and Exchange Act of 1934." Upon receipt of the order, Mr. Richardson drafted a memorandum evaluating it and suggesting possible defenses. In November of that year, responsibility for the defense of Hamilton Life and its officials shifted to counsel in Chicago.[8]
 The rationale underlying Canon 4 is the principle that a client should be encouraged to reveal to his attorney all possibly pertinent information. See Canon 4 of the Code of Professional Responsibility, Notes 1 and 2. A client should not fear that confidences conveyed to his attorney in one action will return to haunt him in a later one. It is readily apparent that if an attorney is permitted to reveal confidences "the free flow of information from client to attorney, so vital to our system of justice, will be irreparably damaged." United States v. Standard Oil Company, 136 F. Supp. 345, 355 (S.D.N.Y.1955); see ABA, Informal Opinion No. 287 (1953).
 Therefore, the courts, in order to protect the communications between attorney and client, have generally disqualified an attorney whenever the subject matter of the second representation is "so closely connected with the subject matter of the earlier representation that confidences might be involved." ABA, Informal Opinion No. 1233 (Aug. 24, 1972).[9]
 The plaintiff contends that it is incumbent on the defendants to come forward with evidence to demonstrate that the previous representation is related to the present representation. The rule, however, is clear that the defendants need not show by direct evidence that Mr. Richardson acquired information in the course of the previous litigation which is to be used in the pending action. They only need to show that Mr. Richardson might have acquired substantially related material. T. C. Theatre Corp. v. Warner Bros. Pictures, supra.[10] This position was well stated by Judge Weinfeld in that decision as follows:
 "In cases of this sort the Court must ask whether it can reasonably be said that in the course of the former representation the attorney might have acquired information related to the subject matter of his subsequent representation." Id. 113 F.Supp. at 269.
 Mr. Richardson spent a considerable amount of time interviewing officers and directors, who are presently defendants, and examining their personal files, as well as the files of Hamilton Life. Although the exact nature of the information he received is unknown, it is known that he had access to confidential information about Hamilton Life's finances, corporate structure and operations, which he would not have received had he not been its attorney. We believe that the district court was justified in concluding that the information Mr. Richardson received in the prior SEC action might be related to the subject matter of his subsequent representation.
 While we do not doubt that Mr. Richardson acted in good faith and had the best interests of his class at heart when he brought this suit, we do not believe that he should be permitted to place himself in a position where, even unconsciously, he will be tempted, or it appears to the public and his former clients that he might be tempted, in the interests of his new client, to take advantage of information derived from confidences placed in him by Hamilton Life and its officials. See Estates Theatres, Inc. v. Columbia Pictures Industries, Inc., 5 CCH Trade Reg.Rep. p 74,106, at 92,620 (S.D.N.Y., July 17, 1972); T. C. Theatre Corp., supra; cf. Fleischer v. A. A. P., Inc., 163 F.Supp. 548 (S.D.N.Y.1958). We note that Mr. Richardson is not the only member of the class available to maintain an action such as this, and the district court order does not preclude an action by others based on the subject matter of this suit.
 Whenever an allegation is made that an attorney has violated his moral and ethical responsibility, an important question of professional ethics is raised. It is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar.[11] The courts, as well as the bar, have a responsibility to maintain public confidence in the legal profession. This means that a court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety.[12]
 
 
 
 4
 * * *
 
 
 5
 We have held that the regulation of attorneys appearing before the district court in these matters will be disturbed only when, on review of the record, we can say that the district court abused its permissible discretion.[13] Greene v. Singer, 461 F.2d 242 (3d Cir. 1972); cert. denied, 409 U.S. 848, 93 S. Ct. 54, 34 L.Ed.2d 89, (Oct. 10, 1972).
 
 
 
 * * *
 On this record the district court has not exceeded the bounds of its permissible discretion,[14] and the above-mentioned November 3, 1971, order (see note 1 supra) will be affirmed.
 
 
 [1]
 The lower court opinion is reported at 333 F.Supp. 1049 (E.D.Pa.1971). The first sentence of the November 3, 1971, order challenged by the appeal provides:
 ". . . the motion of Hamilton International Corporation, Hamilton Life Insurance Company of America and individually named defendant officers and directors of those companies to disqualify plaintiff, Mr. James M. Richardson, is GRANTED."
 A motion to dismiss this appeal for lack of jurisdiction was denied by another panel of this court by order of February 10, 1972. See Greene v. Singer Co., 461 F.2d 242 (3d Cir.); cf. Hackett v. General Host Corp., 455 F.2d 618, 624-625 (3d Cir. 1972).
 
 
 [2]
 The complaint lists the following defendants, who are directors or officers in Hamilton Life or Hamilton International: Owens, Bruce, Safford, Milby, Gust, Davidson, Hofheins, Kresge, Mange, Schuler and Guenther. Also, Lybrand, Ross Bros. & Montgomery was listed as a defendant. The motion of Lybrand, Ross Bros. & Montgomery (an accounting firm) to disqualify plaintiff was denied by the November 3, 1971, order
 
 
 [3]
 Mr. Richardson first purchased shares in Hamilton Life in 1964 after he started to represent that company. At the time he filed his complaint, he owned 1100 shares
 
 
 [4]
 The Code of Professional Responsibility was adopted by the House of Delegates of the American Bar Association on August 12, 1969, to become effective for American Bar Association members on January 1, 1970
 The Ethical Considerations of Canon 4 provides, inter alia:
 "Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or sought to employ him. . . . The observance of the ethical obligation of a lawyer to hold inviolate the confidences and secrets of his client not only facilitates the full development of facts essential to proper representation of the client but also encourages laymen to seek early legal assistance.
 "A lawyer should not use information acquired in the course of representation of a client to the disadvantage of the client and a lawyer should not use, except with the consent of his client after full disclosure, such information for his own purposes. . . .
 "The obligation of a lawyer to preserve the confidences and secrets of his client continues after the termination of his employment. . . ."
 
 
 [5]
 Rule 11 states that "the canons of ethics of the American Bar Association as now existing shall be and as hereinafter modified shall become standards of conduct for attorneys of this Court."
 
 
 [6]
 The officials interviewed included Owens, Bruce, Safford, Davidson, Gust and Milby
 
 
 [7]
 Paragraph 34(a)iii of the complaint alleged that the proxy statement was false and misleading, because it failed to set forth "the fact that individual defendants had caused Hamilton Life to pay about $100,000 in attorney's fees for the benefit of defendants Owens, Bruce and Safford. . . ." Those fees were for work done during the SEC hearing
 
 
 [8]
 The Controller for Schnader, Harrison, Segal and Lewis revealed that Mr. Richardson spent 669.1 hours between September 1964 and June 1966 on the representation of Hamilton Life
 
 
 [9]
 See, e. g., T. C. Theatre Corp. v. Warner Bros. Pictures, 113 F.Supp. 265 (S.D. N.Y.1953); Consolidated Theatres, Inc. v. Warner Bros., 216 F.2d 920 (2d Cir. 1954); and Annotation, 52 A.L.R.2d 1243
 
 
 [10]
 See cases cited in note 9 supra
 
 
 [11]
 See E. F. Hutton v. Brown, 305 F.Supp. 371, 378 (S.D.Tex.1969)
 
 
 [12]
 The United States District Court for the Eastern District of Pennsylvania has adopted by Rule 11 the ABA Code of Professional Responsibility as containing proper standards of professional conduct for the members of its bar. Other courts have reached the same conclusion. See Estates Theatres, Inc. v. Columbia Pictures Industries, Inc., supra; E. F. Hutton & Co. v. Brown, supra 305 F. Supp. at 377 n. 7, and cases cited therein
 Canon 9 provides that a lawyer should avoid even the appearance of professional impropriety. The Ethical Considerations under that Canon provide, inter alia:
 ". . . A lawyer should promote public confidence in our system and in the legal profession.
 "Public confidence in law and lawyers may be eroded by irresponsible or improper conduct of a lawyer. On occasion, ethical conduct of a lawyer may appear to laymen to be unethical.
 "Every lawyer owes a solemn duty . . . to strive to avoid not only professional impropriety but also the appearance of impropriety."
 
 
 [13]
 In this case, the court properly considered such factors as (333 F.Supp. at 1050 and 1055):
 "Different and possibly conflicting policies of the law become apparent. On one hand SEC regulations are designed to protect shareholders of a corporation from wrongdoing and bad faith dealing with the 'insiders' of the corporation. Mr. Richardson is a shareholder and is, along with all other shareholders, entitled to that protection. On the other hand, the law seeks to protect attorney-client confidences. If the facts presented compel the conclusion that the attorney-client privilege exists as to these defendants, then the divergent policies of the law must be resolved, and, if possible, harmoniously reconciled.
 "We come face to face now with the conflicting policies of the law, i. e., to protect shareholders and to protect the confidences of former clients. No amount of legal reasoning can completely harmonize this conflict. There are substantial arguments on both sides; it appears to be a question of priorities.
 "In a suit of this nature there are other shareholders who are able to bring this suit for the benefit of all shareholders. The sacrosanct nature of the attorney-client privilege dictates that an attorney not disclose the confidences of his client no matter how heinous they may be.
 "Mr. Richardson became a shareholder of Hamilton Life during the time that he was representing that company. I point this out not to infer that this was improper, but only to show that it may hint of some impropriety, and it is this suggestion of impropriety that I feel must be avoided."
 
 
 [14]
 The plaintiff urges that Greene v. Singer, supra, controls the outcome of this case. However, the factual basis of Greene is significantly different from the record presented in this case. Under the agreement between Greene and the Friden Company (later acquired by Singer), Greene undertook to develop devices that could be used by Friden in its manufacturing and Friden undertook to prosecute any patent applications on such devices through its patent attorney. Milliken was designated by Friden to act as such patent attorney for Greene. He was authorized and directed to receive disclosures and file any applications for patents. See paragraphs 8 and 9 of findings of fact in Greene v. Singer, Civil No. 1467 (D.N.J. 1971), as well as language of that opinion reproduced at 288a of Appendix in 3d Cir. No. 71-1835 (see, also, pars. 9, 10, 11, 14, 17 & 23 of Wilcox affidavit of April 12, 1971-146a-153a of above Appendix-and par. 5 of Wilcox affidavit of May 4, 1971, at 252a of such Appendix)