**INA UNDERWRITERS
INSURANCE COMPANY**

v.

**Eugene A. RUBIN, Gary Gordon, Tannerie Wood Corporation, Honeyrun Construction Company, Mt. Pleasant Builders, Inc., G & R Builders, Inc., Lorimer Woods Associates, and Gwynedd Woods, Inc.**

No. 82–1989.

United States District Court,
E.D. Pennsylvania.

Feb. 10, 1983.

## OPINION

JOSEPH S. LORD, III Senior District Judge.

Defendants have moved: (1) to disqualify plaintiff's counsel; (2) for a more specific pleading under Federal Rule of Civil Procedure 12(e); and (3) to dismiss defendants Mt. Pleasant Builders, Inc., G. & R. Builders, Inc., Lorimer Woods Associates, and Gwynedd Woods, Inc., under Federal Rule of Civil Procedure 12(b)(6).

### I. Motion to Disqualify

Defendant Rubin has filed a motion to disqualify plaintiff's law firm, Wolf, Block, Schorr and Solis-Cohen (Wolf Block). Both sides agree to the following facts:

Defendant Rubin is a builder who was sued for money expended by the plaintiff (INAU) to repair defects in homes in Tannerie Woods, a housing development built by defendant Rubin. Plaintiff claims that it is a third-party beneficiary to a contract between Rubin and the Local Warranty Council of the National Home Warranty Corporation in which Rubin guarantees the quality of construction of his homes and agrees to binding arbitration in the event that any defects in the homes be discovered. INAU's complaint alleges that several homeowners asserted claims against Rubin which were submitted to arbitration, resulting in awards for the homeowners. Because Rubin refused to abide by the arbitration awards, the plaintiff was forced to spend more than one and one-half million dollars.

The complaint was filed on May 4, 1982. But, due to difficulties in finding Mr. Rubin, it was not served until May 20, 1982. In May of 1982, Eugene Rubin was contacted by the F.B.I. because it was investigating the Tannerie Woods development. Eugene Rubin contacted Gregory Magarity, a partner of Wolf Block who specializes in criminal law. On May 17, 1982, Rubin met with Magarity and discussed issues pertaining to the Tannerie Woods development. Magarity accepted a $1,000 retainer check, but told Rubin that he would hold the check until he found out whether a conflict of interest existed with any of the firm's clients. Immediately after the meeting, Magarity circulated the standard memorandum to the other members of the firm asking whether there was a conflict of interest. Mr. Boote, the attorney representing INAU notified Magarity that a conflict did exist. Magarity, in turn, notified Rubin by phone that a conflict existed and that he could not take the case. By letter dated May 20, 1982, Magarity confirmed that he could not represent Rubin and returned Rubin's retainer check.

At the argument on defendant's motion to disqualify, defendant conceded that Mr. Magarity did not act improperly. Magarity's affidavit and that of Mr. Boote, stating that they never discussed the substance of Magarity's meeting with Rubin, are uncontroverted. Defendant contends, however, that plaintiff's law firm must be disqualified in order to avoid the appearance of impropriety.

Canon 9 of the American Bar Association's Code of Professional Responsibility, adopted by Rule 14 of the Local Rules of Civil Procedure for the Eastern District of Pennsylvania, requires that a lawyer avoid even the appearance of impropriety. This canon is especially operative in connection with Canons 4 and 5 of the Code which require that attorneys protect confidences and secrets of their clients and exercise independent professional judgment on behalf of their clients.

Disciplinary Rule 5–105(A) states:

A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing different interests ...

Although it would have been more prudent for Mr. Magarity to speak only briefly with Rubin before checking with the rest of the firm for a conflict of interest, he did follow the dictate of Disciplinary Rule 5–105(A).

He promptly refused to accept Rubin's employment when he found out that his firm represented INAU.

Unfortunately, by the time he refused to accept Rubin's employment, Magarity had knowledge of Rubin's confidences and secrets.

Disciplinary Rule 4–101(B) states:

Except when permitted under D.R. 4–101(C), a lawyer shall not knowingly:

(1) Reveal a confidence or secret of his client.

(2) Use a confidence or secret of his client to the disadvantage of the client.

(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.

In the context of attorney disqualification, Disciplinary Rule 4–101(B) usually applies to an attorney's successive representation of clients who have adverse interests. For example, attorney A represents client B in a suit against C. After the case is over, attorney A joins a law firm which represents C in another matter. Attorney A works on C's case. In this situation, the Third Circuit will disqualify attorney A from representing C if in his or her representation of B, attorney A "might have acquired" material which was "substantially related" to attorney A's representation of C. *Richardson v. Hamilton International Corp.*, 469 F.2d 1382, 1385 (3d Cir. 1972), *cert denied,* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973).

The purpose for disqualification is to guard against even the inadvertent use of the former client's secrets and confidences.

Although the chronology of facts in the instant case differs from that usually encountered in Disciplinary Rule 4–101(B) cases, the reasoning of the courts interpreting the Disciplinary Rule 4–101(B) cases applies. Here, Rubin was not a former client of Magarity. In fact, Rubin met with Magarity after Wolf Block had begun to represent INAU. Nevertheless, Rubin did reveal secrets and confidences to Magarity in an interview as a prospective client.

Because Magarity acquired knowledge of Rubin's confidences during the interview of a prospective client, Magarity is bound by Disciplinary Rule 4–101(B) not to reveal those confidences. Moreover, plaintiff's attorney conceded at the argument that Magarity has acquired from Rubin material which is "substantially related" to INAU's case. Under the *Richardson* test, *supra,* therefore, having acquired knowledge of Rubin's secrets and confidences, Magarity would be disqualified from representing INAU.

But Magarity individually never represented and never attempted to represent the plaintiff in this case. The question then arises whether this circuit imposes an irrebuttable presumption that imputes Magarity's knowledge of Rubin's confidences to all the other partners in the Wolf Block firm. If there is an irrebuttable presumption, I am compelled to disqualify Wolf Block without even considering Magarity and Boote's affidavits. If the presumption is rebuttable and I find that plaintiff's counsel has overcome the presumption, I must go on to consider whether, in any event, Canon 9 would require the disqualification of the Wolf Block firm.

Disciplinary Rule 5–105(D) states:

If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner or associate, or any other lawyer affiliated with him or his firm may accept or continue such employment.

In the present case, in accordance with Disciplinary Rule 5–105(A), Magarity declined to represent Rubin because a conflict of interests existed between his potential representation of Rubin and his firm's representation of INAU. Therefore, under Disciplinary Rule 5–105(D), no one else in the Wolf Block firm could represent Rubin.

The question, however, is not whether Disciplinary Rule 5–105(D) forbids other lawyers at Wolf Block from accepting Rubin as a client, but rather whether Magarity's knowledge of Rubin's secrets and con-

fidences would require Wolf Block to withdraw from representing INAU.

Because Disciplinary Rule 4–101(B), as interpreted by the Third Circuit in *Richardson, supra,* would prohibit Magarity from representing INAU, it appears that Disciplinary Rule 5–105(D) would require Magarity's associates at Wolf Block to withdraw from their representation of INAU.

The precept of Disciplinary Rule 5–105(D), however, is not absolute. Legal scholars and the American Bar Association have suggested the use in certain cases of a "Chinese Wall", a mechanism that would screen secret documents and firm members possessing knowledge of secrets and confidences in order to avoid disqualification of the entire firm. As noted recently in the Harvard Law Review:

> Unlike the ABA Code's specific injunctions against actual disloyalty and breaches of confidences, DR 5–105(D)'s mandate of affiliate disqualification is entirely prophylactic: It is designed to prevent behavior not because the behavior is intrinsically improper but because it involves *a risk* of impropriety. Rejecting a strict imputation rule therefore need not violate the ethical precepts the rule is designed to protect—here, the duty of confidentiality—as long as a prophylactic alternative is adopted that does adequately contain the risks the rule was charged with forestalling. The Chinese wall is designed to provide just such a procedural surrogate by ensuring that an attorney will not breach his underlying duties, even as the formal obligation of DR 5–105(D) is set aside. Therefore, although automatic imputation of knowledge may be the preferred rule for most cases, when the costs of that rule (in terms of attorney mobility and other values) become too high, the alternative prophylaxis provided by the Chinese wall may serve as a convenient—and generally effective—safeguard ...

*Developments in the Law: Conflicts of Interest in the Legal Profession,* 94 Harv. L.Rev. 1244, 1369–70 (April, 1981) (footnotes omitted).

Furthermore the American Bar Association has construed Disciplinary Rule 5–105(D) not to require the disqualification of the entire firm of a former government employee who must refuse work on a case under Disciplinary Rule 9–101(B)[1] if the former government employee is properly screened from any direct or indirect participation in the case. A.B.A. Formal Opinion 342, 62 A.B.A.J. 517 (April, 1976).

In *United States v. Miller,* 624 F.2d 1198 (3d Cir.1980), the court left open the possibility of the use of a screening mechanism to avoid disqualification of an entire firm where an individual lawyer is disqualified under Disciplinary Rule 9–101(B). *Id.* at 1204. In *Miller,* the court refused to decide "whether a screening mechanism might in some case allow a law firm to avoid a complete disqualification," *id.,* because the appellant had never requested that the district court consider the establishment of a screening mechanism. The court stated:

> No record was compiled. We have nothing to tell us how a screening mechanism would operate in this case and whether it would be adequate to prevent an appearance of impropriety from arising ... These are not matters that should be investigated for the first time in the Court of Appeals.

*Id.*

■ *Miller's* suggestion that the district court may consider a screening mechanism in a Disciplinary Rule 9–101(B) case coupled with its assertion that "[t]he proper scope of a disqualification order is a matter committed to the district court's discretion," *id.* at 1203, *citing Ackerly v. Red Barn System, Inc.,* 551 F.2d 539 (3d Cir. 1977), and the holding in *Ackerly* that the district court did not abuse its discretion in refusing to disqualify main counsel even

---

**1.** A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.

though it did disqualify local counsel, compel the conclusion that the Third Circuit does not interpret Disciplinary Rule 5-105(D) to create an irrebuttable presumption. Although the A.B.A. Formal Opinion and the *Miller* case involve Disciplinary Rule 9-101(B) and special policy considerations would encourage one not to apply Disciplinary Rule 5-105(D) strictly to former government attorneys, allowing a district court to weigh evidence on a screening device in a Disciplinary Rule 9-101(B) case, presupposes that the presumption of imputed knowledge is rebuttable.

> Once it is admitted that a Chinese Wall can rebut the presumption of imputed knowledge in former government attorney cases, it becomes difficult to insist that the presumption is irrebuttable when the disqualified attorney's previous employment was private and not public. To hold fast to such a proposition would logically require a belief that privately employed attorneys are inherently incapable of being effectively screened, as though they were less trustworthy or more voluble than their ex-government counterparts. If former government attorneys can be screened effectively, it follows that former private attorneys can too.

*Note: The Chinese Wall Defense to Law-Firm Disqualification,* 128 U.Pa.L.Rev. 677, 701 (1980).

■ Because the imputed knowledge presumption is rebuttable, I must consider whether the plaintiff has overcome the presumption. Plaintiff has filed affidavits of Mr. Magarity and Mr. Boote. The affidavits, which are uncontroverted by the defendant, state that Magarity has never discussed the substantive content of the meeting with Rubin, with Boote or anyone else either inside or outside the Wolf Block firm. Furthermore, the affidavits state that Magarity has never made available to anyone his notes from the conference with Rubin. Both affiants swear that they will not discuss the content of the meeting in the future. I believe the affidavits.

If ever a screening mechanism can be effective, this is the case. Wolf Block is a very large law firm, and only one of its members, Magarity, needs to be screened. Magarity's involvement in Rubin's case is not an ongoing affair: it consisted of one meeting with Rubin only. Only one document must be screened: Magarity's notes of the meeting. Although a "Chinese Wall" may be impracticable in most situations, the facts here make its use appropriate and practical. As a condition of my finding the "Chinese Wall" workable, I will require that Magarity destroy his notes of the meeting with Rubin and furnish proof of destruction to this court.

■ Even though a screening mechanism has been and will continue to be employed successfully to guard the confidentiality of the content of the Rubin-Magarity meeting, Canon 9 alone, which cautions lawyers to avoid even the appearance of impropriety, could be sufficient to require the disqualification of the Wolf Block firm. *I.B.M. v. Levin,* 579 F.2d 271 (3d Cir.1978). In deciding whether or not to order disqualification, this court "has a wide discretion in framing its sanctions so as to be just and fair to all parties involved." *Id.* at 279. In *Miller,* the court set forth the factors a district court should consider:

> [T]he court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule. It should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions.

*Id.* at 1201.

The facts in this case make disqualification of the Wolf Block firm a totally inappropriate remedy. Because of the peculiar facts in this case, a refusal to disqualify Wolf Block will promote not only the purposes of Canon 9 to maintain the public confidence in the integrity of the legal system, but also the policies of respecting a

litigant's right to retain counsel of choice and of enabling attorneys to practice without excessive restrictions. INAU retained Wolf Block to investigate this case in July, 1981. (Boote Affidavit at 1, 2). INAU filed its complaint on May 4, 1982, but was unable to serve Mr. Rubin with the complaint until May 20, 1982. (Boote Affidavit at 2, 3). In the meantime, on May 17, 1982, Rubin contacted Magarity. After receiving Magarity's letter and the complaint, Rubin waited almost five months to file a motion to disqualify Wolf Block. During that five month period, defendant entered into a series of stipulations with the plaintiff extending the time for defendant to answer the complaint.

The public could lose its confidence in the integrity and efficiency of the legal process if I were to disqualify Wolf Block. Although I am not questioning Mr. Rubin's good faith in approaching Magarity to discuss his case, it may appear to the public that Rubin was aware that INAU had already hired Wolf Block and that a lawsuit would be filed against him soon. Thus, it could appear to the public that Rubin approached Magarity in order to disqualify Wolf Block as a tactic to delay the lawsuit.

This public concern would outweigh the public's concern that Magarity has confidential information about Rubin, especially because I have found that Magarity has been screened effectively.

From INAU's perspective, the plaintiff's right to retain counsel of its choice, although not absolute, should be respected. Rubin voluntarily discussed the case with Magarity in May of 1982 *after* the complaint was filed, and Rubin did not file the motion to disqualify until five months after he received the complaint. INAU had been paying fees and charges to Wolf Block since July of 1981, including the five months' delay before Rubin filed this motion. If Wolf Block is disqualified, INAU will be compelled to retain new counsel and duplicate the fees and charges already paid to Wolf Block.

Because Rubin will not be prejudiced by my refusal to disqualify Wolf Block, and the public may perceive disqualification as manifestly unjust and improper, I will not disqualify Wolf Block.

## II. Motion for a More Definite Statement

■ Defendants also move under Federal Rule of Civil Procedure 12(e) for a more definite statement. Because the federal rules allow notice pleading, a 12(e) motion should not be granted unless the complaint is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." 2 A. J. Moore, *Moore's Federal Practice* ¶ 12.18 (2d ed. 1982). Defendants assert that the complaint is vague because it does not specify which homes are defective in the Tannerie Woods development or which owners have registered complaints. I disagree.

The complaint explains fully the homeowners' warranty program and its workings. Attached to the complaint are copies of the Home Warranty and Builder Agreements, which the complaint alleges defendants breached. Although the complaint does not identify by name the homeowners, or by address the defective homes in question, paragraphs 42 through 46 of the complaint clearly state that the builders received prompt notification of the arbitration awards and failed to comply with the awards. Such failure, the complaint states, is a repudiation of defendants' contract obligations.

By alleging that the defendants received notice of the arbitration awards, the complaint indirectly alleges that the defendants have notice of the names of the homeowners and the addresses of the defective homes. Therefore, the subjects of the arbitration awards are within defendant's knowledge and the defendants should be able to form a responsive pleading. *See. id.* If defendant requires further information for his defense, the discovery rules furnish adequate means to obtain it. I will deny defendants' motion for a more definite statement.

### III. Defendants Mt. Pleasant Builders, Inc., G. & R. Builders, Inc., Lorimer Woods Associates, and Gwynedd Woods, Inc. Motion to Dismiss

The non-builder defendants, Mt. Pleasant Builders, Inc., G. & R. Builders, Inc., Lorimer Woods Associates, and Gwynedd Woods, Inc. move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), alleging that the complaint fails to state a claim against them because the allegation in paragraph 14 of the complaint is a conclusory statement without sufficient factual support.

Paragraph 14 of the complaint alleges: Plaintiff believes and therefore avers that defendants Mt. Pleasant Builders, Inc., G. & R. Builders, Inc., Lorimer Woods Associates, and Gwynedd Woods, Inc., and non-defendants Marvin Allanoff and Dublin Properties may have acted together with the Builder defendants in some or all of the acts referred to herein.

Paragraph 53 alleges that INAU is a creditor of the builder defendants under the Uniform Fraudulent Conveyances Act, 39 Pa.Stat.Ann. § 351 et seq.

Paragraphs 53 through 60 allege that the builder defendants have made and will make various conveyances of their assets to each other *and to the other defendants* in violation of various provisions of the Uniform Fraudulent Conveyances Act, *supra.*

A motion to dismiss should be granted only in the clearest of cases. "Where additional facts obviously are required before an ultimate judgment may be formed, the motion must fall." *Swartz v. Eberly*, 212 F.Supp. 32, 36 (E.D.Pa.1962). After discovery, INAU will have acquired the additional facts necessary to spell out its claims against the non-builder defendants with specificity.

Because it does not appear from the complaint that INAU can prove no set of facts in support of its claim against the non-builder defendants which would entitle it to relief, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), defendants' motion to dismiss is denied.