**In re HIGHWAY TRUCK DRIVERS AND HELPERS LOCAL UNION #107, an unincorporated association, Debtor.**

Bankruptcy No. 87–05211F.

United States Bankruptcy Court,
E.D. Pennsylvania.

May 17, 1988.

Michael L. Temin, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, Pa., for creditors, Ronald and Frances Gajkowski, William and Jean Abate and Robert Shipske.

Edward DiDonato, Ciardi, Fishbone & DiDonato, Philadelphia, Pa., for the debtor/movants, Highway Truck Drivers and Helpers Local Union # 107.

James J. O'Connell, Philadelphia, Pa., Asst. U.S. Trustee.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

Pending before me is the debtor's motion to disqualify the law firm of Wolf, Block, Schorr and Solis–Cohen ("Wolf, Block") and Marvin Krasny, Esquire as counsel to several creditors. The debtor asserts that it consulted with Mr. Krasny in 1984, (while he was connected with another firm), in general, about the possibility of filing bankruptcy and, specifically, about its op-

tions in bankruptcy for dealing with certain creditors represented by Wolf, Block. In 1987, Mr. Krasny joined the bankruptcy department at Wolf, Block which continues to represent those same creditors of the estate. The debtor, of course, has filed bankruptcy by other counsel.

On the basis of the evidence offered at hearing on May 4, 1988, I make the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. The debtor, Highway Truck Drivers & Helpers Teamsters Local No. 107 ("the union" or "the debtor") is a union which filed for relief under chapter 11 of the bankruptcy code on October 16, 1987.

2. Wolf, Block, Schorr and Solis–Cohen is a large law firm, located in Philadelphia. Since approximately 1980, Wolf, Block has represented Ronald and Frances Gajkowski; William and Jean Abate and Robert Shipske ("the Gajkowski plaintiffs" or "the Gajkowski creditors") in complex litigation against the debtor. The Gajkowski plaintiffs are currently the largest potential creditor of the debtor's estate. Until the present, Wolf, Block has represented the Gajkowski plaintiffs in this bankruptcy proceeding.

3. Sometime during 1984, judgment was entered in the Court of Common Pleas for Bucks County, Pennsylvania in favor of the Gajkowski plaintiffs and against the union in the approximate amount of $1,300,-000.00. Around that time, the union began to contemplate bankruptcy.

4. In late June, 1984, Thomas Jennings, Esquire, trial counsel to the union in the Gajkowski matter contacted Marvin Krasny, then a partner in the firm of Adelman, Lavine, Krasny, Gold & Levin ("Adelman, Lavine") and asked to arrange a meeting to discuss the union's potential bankruptcy filing.

5. On July 3, 1984, the requested meeting was held at Mr. Jenning's office. The principal participants were Krasny, Jennings, Joseph Cimino, the union's president

and Samuel Fisher, the union's secretary-treasurer.[1]

6. At the meeting, the union's representatives requested advice from Mr. Krasny about the advisability of filing bankruptcy to deal with the Gajkowski plaintiffs' claims. The testimony of Mr. Krasny, Mr. Jennings and Mr. Cimino differed somewhat on the scope and subjects covered during the meeting. I conclude based on the testimony that the following general topics might have been discussed: the history of the Gajkowski litigation; the potential strategies for the Gajkowski litigation in state court, as well as the merits of those strategies; the aims and goals of the union in any potential bankruptcy; the effect of bankruptcy on the Gajkowski litigation; the optimal timing for bankruptcy; the preference provisions of the bankruptcy code as they related to any Gajkowski judgment; the assets, liabilities and finances of the union; and the relationship between the international and local unions.[2]

7. During the meeting, Mr. Krasny stated that his firm (Adelman, Lavine) would handle the case, if it became necessary, for a $25,000.00 retainer. Mr. Krasny billed the union $250.00 in connection with the meeting, which bill was ultimately paid. (Exhibits D–1, D–3).

8. Subsequent to the meeting, the union apparently decided not to file bankruptcy at that time. It appears instead that the union opted to pursue certain state court remedies on appeal.

9. In August, 1987, Mr. Krasny joined Wolf, Block as a partner in the bankruptcy department.

10. Upon learning of the union's bankruptcy filing, Mr. Krasny and the firm of Ciardi, Fishbone and DiDonato, the union's bankruptcy counsel, entered into discussions about, *inter alia*, Mr. Krasny's potential conflict of interest. *See* Exhibit D–5. In Exhibit D–5, a letter on Wolf, Block stationery signed by Mr. Krasny and dated October 29, 1987, Mr. Krasny offered to have another member of Wolf, Block's bankruptcy department handle the Gajkowski's claims in bankruptcy and to erect a "chinese wall" or "cone of silence" so that he would not participate in the case.[3]

11. On or about November 2, 1987, a luncheon meeting was held between Mr. Ciardi, Mr. Jennings, Mr. Krasny and Gregory Magarity, the Wolf, Block partner handling the Gajkowski matter in state court. At the meeting, Wolf, Block agreed to temporarily take "a standstill position" regarding the debtor's plan for reorganization. The debtor agreed to temporarily take no action regarding the disqualification of Wolf, Block.[4] Both parties apparently assumed that Mr. Krasny and Wolf, Block would screen Mr. Krasny from further participation in this case.

12. On November 20, 1987, a notice of appearance was filed on behalf of the Gajkowski creditors with the bankruptcy clerk by Mr. McGarrity of Wolf, Block. A copy of the notice of appearance was sent to Mr. Ciardi with a cover letter signed by Mr. Krasny (Exhibit D–6).

13. On January 11, 1988, the debtor filed a motion to extend time within which to file a plan and for the soliciting of acceptances under 11 U.S.C. § 1121. On or about February 8, 1988, Wolf, Block filed an objection to the motion on which Mr. Krasny was listed as lead counsel for the

---

1. Although there was conflicting testimony about how long the meeting lasted (Mr. Jennings: "2½ hours," Mr. Krasny: "1 hour"), the length of the meeting is not central to a determination of this motion. I do note, though, that Mr. Krasny's charge for this consultation reflects a shorter, rather than longer meeting. *See* Finding of Fact # 7.

2. Mr. Krasny may also have advised the union to move its bank accounts out of state in order to hinder potential efforts to execute on any judgment.

3. Use of the terms "chinese wall" and "cone of silence" has been adopted by the parties. I have assumed that these terms refer to the practice of screening one or more attorneys at a firm so that they will neither participate in nor receive a fee from a particular case. *See generally, INA Underwriters Insurance Co. v. Rubin,* 635 F.Supp. 1 (E.D.Pa.1983).

4. An agreement was also apparently reached regarding appraisal by the Gajkowski creditors of certain real estate owned by the debtor.

Gajkowski creditors. (Exhibit D-2). The objection was signed, however, by a Wolf, Block associate. Mr. Krasny testified that he was out of the country at the time the objection was filed and that he was unaware of it.

14. Upon receiving the objection, Mr. Cimino, the union president, wrote to Mr. Krasny and asked that Wolf, Block withdraw. (Exhibit D-4). Neither Mr. Krasny nor Wolf, Block responded to the letter.

15. On March 8, 1988, the debtor filed the instant motion to disqualify Wolf, Block and Mr. Krasny. A hearing on the motion was scheduled for March 30, 1988.

16. On March 9, 1988, hearings were held on a motion filed by another creditor to dismiss or convert the bankruptcy, and on the debtor's motion for an extension of the exclusivity period. Mr. Krasny and an associate from Wolf, Block were present at the hearings. When an objection was made to the participation of Krasny and Wolf, Block based on the pending motion to disqualify, Krasny and the associate agreed not to participate in the hearings, although they remained present in the courtroom.

17. On March 24, 1988, a hearing was held on the debtor's motion to modify or annul the automatic stay in order to allow it to pursue an appeal against the Gajkowski plaintiffs in state court. Krasny participated in the hearing and argued the Gajkowski plaintiffs' position pursuant to a express agreement with debtor's counsel that he could participate "without prejudice to the position of either party on the disqualification issue." (Memorandum of Gajkowski et al. at p. 5.).

18. In its response to the debtor's motion to disqualify, Wolf, Block admitted that no "chinese wall" had been erected at Wolf, Block to preclude Krasny's involvement in this case.[5] Krasny testified, however, that he believed a chinese wall had been in place.

19. Both Mr. Jennings and Mr. Cimino testified as to their belief that the bankruptcy schedules and financial information which have been supplied to the court by the debtor to this date are acccurate and complete.

## CONCLUSIONS OF LAW

1. Despite recent changes in the standards governing professional conduct of attorneys in this jurisdiction, it is necessary to apply prior law to decisions which were made by attorneys before the change in professional standards. Under prior law in this jurisdiction, an attorney must be disqualified if during prior representation of a client with interests adverse to a current client he or she "might have acquired" material or information "substantially related" to the current representation. *Richardson v. Hamilton International Corp.,* 469 F.2d 1382, 1385 (3rd Cir.1972) *cert. denied,* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973); *INA Underwriters Insurance Co. v. Nalibotsky,* 594 F.Supp. 1199 (E.D.Pa.1984).

2. Both current and prior standards governing professional conduct might allow a firm to represent a client when a lawyer currently at the firm had represented an adverse party before joining the firm, provided that the lawyer is effectively screened from participation in the current case and from receiving any portion of the applicable fee. Rule of Professional Conduct 1.10(b). *INA Underwriters Insurance Co. v. Rubin,* 635 F.Supp. 1 (E.D.Pa. 1983).

3. In this case Krasny was not properly screened from participation in the case, so that if Krasny were disqualified, Wolf, Block would have to be disqualified as well.

4. The fact that Krasny represented the debtor by a consultation which occurred for a period of less than three hours, more than three years ago, taken together with the expansive public record required in a bankruptcy case persuade me that Krasny did not acquire confidential information or material "substantially related" to current representation of the Gajkowski creditors. Under such circumstances disqualification of Krasny or Wolf, Block is not required.

---

**5.** The pleadings were admitted into evidence to the extent of the admissions contained therein.

## DISCUSSION

The law governing attorney disqualification based on prior representation of adverse parties is fairly straightforward and is discussed in Part I below. The factual circumstances particularly in light of the posture in which this case has been presented to me, however, are quite troubling and present difficult issues. My application of the law to those facts is contained in Part II.

### I.

██ The decisional law on attorney disqualification in this jurisdiction has long been grounded upon the Code of Professional Responsibility as adopted by the Supreme Court of Pennsylvania. *INA Underwriters Insurance Co. v. Nalibotsky*, 594 F.Supp. 1199, 1202 (E.D.Pa.1984) ("*Nalibotsky*"); *In re Abbotts Dairies of Pennsylvania, Inc.*, 61 B.R. 156 (Bankr.E. D.Pa.1986). *See* E.D.Pa.Civ.R. 14(IV)(B). The law related to successive representation of clients who have adverse interests was largely derived from Canons 4, 5 and 9 of the code. *See Richardson v. Hamilton International Corp.*, 469 F.2d 1382 (3d Cir.1972) *cert. denied*, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973); *INA Underwriters Insurance Co. v. Rubin*, 635 F.Supp. 1 (E.D.Pa.1983); *Nalibotsky*. The Third Circuit has held on several occasions, based on the code, that counsel should be disqualified

> where it appears that the subject matter of the pending suit in which the attorney represents an interest adverse to a prior employer is such that during the course of the former representation the attorney "might have acquired substantially related material."

*American Roller Co. v. Budinger*, 513 F.2d 982, 984 (3d Cir.1975) *quoting, Richardson v. Hamilton International Corp.*, 469 F.2d at 1385. *See also Akerly v. Red Barn System, Inc.*, 551 F.2d 539, 544 n. 12

(3d Cir.1977); *Nalibotsky; In re Ram Manufacturing, Inc.*, 49 B.R. 53 (Bankr.E. D.Pa.1985).

As of April 1, 1988 the Supreme Court of Pennsylvania adopted the Rules of Professional Conduct promulgated by the American Bar Association and thereby superceded the Code of Professional Responsibility. Unlike the code, the relatively new Rules of Professional Conduct contain an expresss provision which addresses representation of interests adverse to a former client. *See In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157 (3d Cir.1984). Rule 1.9 states:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation; or
>
> b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

Part "a" of the new rule thus focuses upon the relationship between the interests currently and formerly represented. Disqualification appears to be mandated when the current and prior representation involves "materially adverse" interests regardless of whether the attorney possesses "substantially related" material or information. However, a question remains as to the definition of the term "materially adverse". It could be credibly argued that interests are not "materially adverse" unless an attorney might have acquired "substantially related" material or information in the course of representing one which is relevant to the other.[6] If this position

---

6. This position would obtain some support from the Third Circuit's exposition of the purpose of the rule contained in *In re Corn Derivatives Antitrust Litigation*, 748 F.2d at 162:

   "It is a prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against him. Without such a rule, clients may be reluctant to confide completely in their attorneys. Second, the rule is important for the maintenance of public confidence in the integrity of the bar. *See Richardson supra.* Finally and

were to prevail, the new rule would work no change in current law in this jurisdiction.

· I need not, however, resolve the effect of the new rule on the law of this jurisdiction. The rule did not take effect until April 1, 1988, after the instant motion to disqualify was filed. Most significantly, the decisions made by Krasny and Wolf, Block in representing the Gajkowski creditors in this bankruptcy case were made in October and November of 1987 before the Code of Professional Conduct was superceded. *In re: Code of Professional Responsibility,* No. 412, Disc. Dkt. No. 2 (Pa.Sup.Ct., October 16, 1987) (*see* 515 Pa. LXIX) ("The Rules of Professional Conduct as adopted hereby do not apply to professional misconduct occurring on or before March 31, 1988"). It would be manifestly unfair to apply the new rules to decisions which were made while the prior standards were still in effect. Thus, I conclude that the issue to be determined here is whether Krasny obtained material or information from the debtor in 1984 which might be "substantially related" to his current representation of the Gajkowski creditors.[7]

In *Nalibotsky,* 594 F.Supp. at 1205–1206, Judge Pollak of our district court set out the framework for making the necessary determination:

> ... it is not necessary, nor is it appropriate, for the court to inquire into the actual confidences or secrets which may have been disclosed during the prior representation and to evaluate their relationship to the current litigation. Such an investigation would substantially undermine the protections for confidences and secrets found in Canon 4 of the Code of Professional responsibility.
>
> \* \* \* \* \* \*
>
> What is required is an evaluation of the prior representation as compared with the substance of the present adverse representation.
>
> \* \* \* \* \* \*

importantly, a client has a right to expect the loyalty of his attorney in the matter for which he is retained."

Thus, a court addressing the "substantial relationship" issue must answer the following questions:

1. What is the nature and scope of the prior representation at issue?

2. What is the nature of the present lawsuit against the former client?

3. In the course of the prior representation might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation?

▮▮▮ In normal circumstances, an issue would be posed here as to whether Wolf, Block could continue to represent the Gajkowski plaintiffs even if Krasny had to be disqualified. That result could be effectuated if Krasny were effectively screened from participation in the case. *United States v. Miller,* 624 F.2d 1198 (3d Cir. 1980); *INA Underwriters Insurance Co. v. Rubin.* *See also* Rule of Professional Conduct 1.10(b). The screening concept was expressly developed for situations such as the case at bench, where an attorney joins a firm after having represented adverse interests to that firm's clients during prior employment. *See Rubin.* However, under the circumstances here, Wolf, Block admits that no screening process was effectively implemented. Consequently, if Krasny is disqualified under the test set forth in *Nalibotsky,* Wolf, Block must be disqualified as well. *See* Disciplanary Rule 5–105(D); *Rubin,* 635 F.Supp. at 4; *In re Paolino,* 80 B.R. 341 (Bankr.E.D.Pa.1987). *See also* Rule of Professional Conduct 1.10.

## II.

▮▮▮ Application of the law to the facts of this case is made complicated by two factors. These are the aborted voluntary attempt of Krasny to screen himself from

7. Both parties appear to concede this point in their trial memoranda in arguing the applicability of *American Roller Co. v. Budinger* and *Nalibotsky.*

the case [8] and the consent of debtor's counsel to allow Krasny to participate in at least one meeting and one court proceeding "without prejudice to the position of either party on the disqualification issue."

■ Clearly, in a close case involving a firm with as many attorneys as Wolf, Block, the best practice would be to implement a screen so as to prevent any possibility that confidences would be misused. In the circumstances of this case, a screen would best balance the competing interests of maintaining public confidence in the integrity of the bar with that of respecting a litigant's right to retain counsel of choice.[9] *See Rubin*, 635 F.Supp. at 5–6.

Here, however, the option of a screen has been effectively taken out of my hands. Not only did Krasny and Wolf, Block fail to properly implement a screen, but also debtor's counsel knowingly allowed Krasny to prticipate in this case, albeit subject to an agreement that the debtor was not waiving its rights as to disqualification.

■ Furthermore, by this same conduct, both parties have undermined their position on this motion. Krasny and Wolf, Block apparently accepted at one point in this case, that there was a need for Krasny to be screened. By leading the debtor to believe that a screen would be implemented, and then not effectively implementing

one, the debtor may have been deprived of its right to obtain effective relief at the outset of this case. Moreover, it would not be unreasonable to infer from the fact that Krasny attempted to screen himself from the case that he was aware of the need to disqualify himself in order to comply with professional standards. The debtor, on the other hand, has apparently encouraged to some extent, Krasny's participation in the case. By discussing substantive issues at a meeting at which Krasny was present and by allowing Krasny to argue a motion before this court, the debtor contributed to pulling down any wall which Krasny and Wolf, Block may have created. Additionally, a reasonable inference would be that the debtor (or its counsel) was not really worried about being harmed by Krasny's participation in the case. Once Krasny participated by consent of debtor's counsel, the damage which the debtor allegedly fears may already have been done.[10]

■ Ultimately, I can only conclude (as both parties appeared to do in their arguments at hearing and in their submissions) that any inferences which can be drawn from the conduct of counsel since this bankruptcy case was filed effectively cancel each other out.[11] Thus I will limit my consideration of this matter to the consultation which the union had with Krasny in 1984 and whether during that consultation

8. Krasny testified that he believed that he had effectively created a chinese wall to screen himself from the case. The supposed wall, if built, was at best of faulty construction. First, Krasny participated in a meeting shortly after bankruptcy was filed at which substantive matters were discussed. If screening were intended, Krasny had a clear responsibility to withdraw from the meeting upon commencement of substantive discussions. Second, Krasny's associate at Wolf, Block was apparently unaware that he was being screened and placed his name on a pleading in the case. There is no question that screening requires careful procedures by which all members of a firm are notified that the screened individual is not to participate in the case. Obviously, case files should be marked in such a way as to alert all concerned not to consult or include the screened attorney on the case. Here, the presence of Mr. Krasny's name as lead counsel on a pleading whether or not he knew about it, is evidence that no screening process was ever effectively implemented.

9. In *Hamilton v. Merrill Lynch*, 645 F.Supp. 60, 61 (E.D.Pa.1986), Judge Ditter stated:

Plaintiff's choice of counsel is entitled to substantial deference. The court should not quickly deprive plaintiffs of their freedom to choose the advocate who will represent their claims, nor lightly dismiss the trust and confidence plaintiffs have placed in their chosen counsel. Additionally, the court must prevent litigants from using motions to disqualify opposing counsel for tactical purposes.

10. Although my resolution of this matter obviates the need to reach the issues of laches and waiver, I question whether the debtor's reservation of rights in agreeing to allow Krasny's participation could effectively preclude laches or waiver. *See generally Nalibotsky*, 594 F.Supp. 1203–1204.

11. I cannot help but note, however, that this dispute could and should have been resolved at the outset of this bankruptcy case.

Krasny might have received material or information substantially related to the instant case.

In answering the first two portions of the inquiry articulated in *Nalibotsky*, I note first that it is clear that both the prior representation and the present representation relate to the debtor's bankruptcy. The scope of the prior representation, however was relatively narrow. Krasny did not undertake full blown representation of the debtor. Only a limited amount of information could have been exchanged during a consultation of less than three hours. Additionally, there is no allegation here that Krasny had access to or came into possession of any relevant documents or that notes were made by Krasny.[12] *See Rubin.*

■ In resolving the third portion of *Nalibotsky* inquiry, I note first that I must focus on potential disclosures of "confidential information". *Nalibotsky*, 594 F.Supp. at 1206. In a bankruptcy case, virtually all financial information related to a debtor's affairs are matters of public record and are thus not confidential. *See* 11 U.S.C. § 107. Exhaustive schedules and statements are required which disclose *inter alia* all assets, liabilities, transfers and income of the debtor.[13] *See generally,* Bankr.Rule 1007; official Forms 6, 8. Information disclosed to Krasny on these subjects is thus not "confidential information ... relevant to the present suit." *Nalibotsky*, 594 F.Supp. at 1206.[14]

■ After hearing testimony, I concluded that the following general topics might have been discussed during the debtor's consultation with Krasny: the history of the Gajkowski litigation; the potential strategies for the Gajkowski litigation in state court as well as the merits of those strategies; the aims and goals of the union

in any potential bankruptcy; the effect of bankruptcy on the Gajkowski litigation; the optimal timing for bankruptcy; the preference provisions of the bankruptcy code as they related to any Gajkowski judgment; the assets, liabilities and finances of the union; and the relationship between the international and the union. (*See* Finding of Fact # 6). Obviously, the subjects on which the debtor might have revealed confidences are its strategies in the Gajkowski litigation; its aims and goals in bankruptcy and its relationship with the international. The other subjects either involve information which is not confidential or matters on which Krasny would advise the union on the law rather than discuss the union's factual position.

On the limited subjects on which confidences may have been exchanged, I can hypothesize no circumstances under which a very complete discussion could have taken place during the initial consultation in this matter. Furthermore, the meeting is now sufficiently remote, having occurred more than three years before the debtor's actual bankruptcy filing, so that information on these subjects, if provided, is extremely unlikely to be relevant to Krasny's current representation of the Gajkowski creditors in this court.[15] Certainly the strategies for dealing with the Gajkowski claims has changed given the complicated posture of the appellate litigation. Similarly, any subtle aims and goals (beyond reorganizing) which the debtor may have in bankruptcy have altered with time. Also, given that the international union was dismissed from the state court litigation during the appeal subsequent to 1984, any information provided to Krasny on the posture of the international related to the Gajkowski claims has been rendered obsolete.

12. Krasny stated he kept no records of the meeting and opened no file.

13. Not surprisingly, the debtor testified that the required schedules were accurate and complete.

14. I note that 11 U.S.C. § 327(c), although not directly relevant to the instant matter, represents a partial liberalization of the law regarding disqualification of attorneys in the bankruptcy context.

15. I do not, of course, pass on whether Krasny or Wolf, Block could be disqualified from representation of the Gajkowski plaintiffs in state court. The merits of the appeal are being resolved in the Pennsylvania Supreme Court, not here. *See generally, In re Clinton Centrifuge,* 72 B.R. 900 (Bankr.E.D.Pa.1987), *appeal pending.*

In sum, I am convinced that given the limited scope and duration of Krasny's prior representation of the debtor more than three years ago and in the context of a bankruptcy system requiring broad public disclosure, Krasny did not acquire confidential information or material substantially related to the representation of the Gajkowski creditors. I thus conclude in light of my discretion in this matter, *see Richardson v. Hamilton International Corp.*, 469 F.2d at 1386, that disqualification of Krasny and/or Wolf, Block is not warranted.

An appropriate order will be entered.

### ORDER

AND NOW, this 17 day of May, 1988, upon consideration of the evidence presented and the submissions of counsel,

it is hereby ORDERED that the debtor's motion to disqualify Marvin Krasny, Esquire and the firm of Wolf, Block, Schorr and Solis–Cohen is DENIED.