**In re INSLAW, INC., Debtor.**

**Bankruptcy No. 85-00070.**

United States Bankruptcy Court,
District of Columbia.

Nov. 14, 1985.

Norman Oliver, Alexandria, Va., Trustee.

Charles Docter, Docter, Docter & Salus, Glenn S. Gerstell, Milbank, Tweed, Hadley & McCloy, Harvey Sherger, Howrey & Simon, Washington, D.C., for debtor.

Kenneth Rosen, West Orange, N.J., for AT & T Information Systems, Inc.

Warren Rosenfeld, Washington, D.C., for Boston Financial & Equity Corp.

Stephen Leach, Washington, D.C., for Unsecured Creditors' Committee.

Karen Zauner, Baltimore, Md., Timothy McCormack, Washington, D.C., for Bank of Bethesda and the Nat. Bank of Washington.

## OPINION AND ORDER

GEORGE FRANCIS BASON, Jr., Bankruptcy Judge.

Upon consideration of the application for interim compensation of counsel to Inslaw, Inc., Milbank, Tweed, Hadley & McCloy ("Milbank") and the objections, responses and memoranda relating thereto filed by the United States Trustee, AT & T Information Systems, Inc., Boston Financial & Equity Corp., the Unsecured Creditors' Committee, Milbank, the Bank of Bethesda and the National Bank of Washington, and after two hearings on notice, this Court finds and concludes as follows:

Under 11 U.S.C. § 327(a), Milbank is disqualified from representing the Debtor ("Inslaw") as Inslaw's counsel in this case because Milbank is not a "disinterested person" as defined in 11 U.S.C. § 101(13). To be "disinterested," a person must be "not a creditor." 11 U.S.C. § 101(13)(A).[1] Here, there is an executory contract dated June 10, 1983, between Milbank and Inslaw, whereby Inslaw was to supply computer software to Milbank. Inslaw has partially performed under that contract, and Milbank has paid Inslaw for the work performed and has made an advance to Inslaw against future performance. That advance is evidenced by a promissory note having a $50,000 balance. Thus, Milbank is at least a contingent creditor of Inslaw, as a result of this commercial transaction between them. *See* 11 U.S.C. §§ 365 and 502(g), relating to a debtor's assumption or rejec-

tion of executory contracts, and claims arising from rejection. Since this commercial transaction is wholly apart from and unrelated to any fees generated by Milbank's employment as Inslaw's counsel before Inslaw commenced this case, the exception contained in 11 U.S.C. § 1107(b) [2] to disqualification under § 327(a) does not apply. *In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328 (D.C.E.D.Pa.1982); *In re Wells Benrus Corp.*, 48 B.R. 196 (Bankr.D.Conn. 1985); *In re Anver Corp.*, 44 B.R. 615 (Bankr.D.Mass.1984); *In re Leisure Dynamics*, 32 B.R. 753 (Bankr.D.Minn.), *affirmed*, 33 B.R. 121, 11 BCD 1116 (D.C.D. Minn.1983).

Moreover, this Court cannot ignore that, "even when business transactions are 'mutually beneficial' to both sides, such transactions involve adverse interests" because the buyer wants to purchase "at the lowest price" and the seller "wishes to realize as much profit as it can reasonably make ..." *In re The Cropper Co., Inc.*, 35 B.R. 625, 631, 11 BCD 637, (Bankr.M.D.Ga.1983).

■ However, Milbank's disqualification under § 327(a) because it is not "disinterested" does not prevent its employment under § 327(e) "for a specified special purpose" if such employment is "in the best interest of the estate" and if Milbank "does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which" Milbank "is to be employed." [3] *In re AM International, Inc.*, Case No. 82B04922, Bankr.M.D.Tenn.,

as cited in *In re Leisure Dynamics*, 32 B.R. at 757.

Here, Milbank's employment has been and will be by this Court limited to (1) assisting Inslaw's bankruptcy counsel "in the initial phases of the Chapter 11 case," restricted to the "development and presentation of initial urgent matters to the Court," [4] (2) holding "discussions with potential providers of capital to allow the Debtor to reorganize," [5] and (3) conducting "negotiations at the highest levels of the Department of Justice in an attempt to settle the contract dispute between the Debtor and the Department of Justice." [6] In addition, Milbank has disqualified itself from any participation in Inslaw's decisions concerning the June 10, 1983 contract between Milbank and Inslaw. "All matters concerning Milbank as a customer or a creditor of Inslaw will be handled by Inslaw's bankruptcy counsel ..." [7]

The testimony of Inslaw's president is relevant to the question whether Milbank's employment, so limited, is "in the best interest of the estate" within the meaning of 11 U.S.C. § 327(e). He testified without contradiction that Milbank's disqualification would be "devastating" because Milbank's efforts to arrange financing and to settle the $1 million contract dispute with the Department of Justice ("DOJ") are "most critical" to the success of Inslaw's reorganization effort. (However, so far as the record reveals, neither of these efforts has yet achieved a successful conclusion.)

---

**2.** 11 U.S.C. § 1107(b) provides:

Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.

**3.** 11 U.S.C. § 327(a) and (e) provide:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

\*        \*        \*        \*        \*        \*

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

**4.** Milbank's Application for Interim Compensation, filed March 22, 1985, pp. 4–5.

**5.** Milbank's "Memorandum ... on Status of Representation," filed September 17, 1985, p. 10.

**6.** *Ibid.*, pp. 10–11.

**7.** *Ibid.*, p. 6.

The remaining question under § 327(e) is whether Milbank "represent[s] or hold[s] any interest adverse to the debtor or to the estate with respect to the matter[s] on which" it "is to be employed." The answer at this time is no. To the contrary, Milbank has a great interest in keeping Inslaw alive so that Inslaw can successfully complete its contractual commitment to supply additional computer software to Milbank and thereafter to provide continuing back-up services to Milbank. As Inslaw's president testified, without Inslaw, Milbank will have no one to service the unique products which Milbank has bought and hopes to buy from Inslaw. In addition, Milbank may be uniquely placed to persuade a rather small number of major law firms to join with it (and with Sullivan & Cromwell) in advancing to Inslaw the funds that Inslaw needs in order to develop the computer software which Inslaw will then sell to those firms and on which Milbank has already paid a large advance. Milbank may also be an especially good choice for conducting "negotiations at the highest levels" of the Justice Department.

For all these reasons this Court concludes that Milbank's employment for the three enumerated "special purpose[s]" is fully justified under 11 U.S.C. § 327(e), at least for so long as the interests of Milbank, the Debtor and the estate, with respect to arranging financing and negotiating the contract dispute with DOJ, remain congruent.

However, Milbank's top rate and its weighted average rate are significantly higher than those of any of the other firms involved in this case.[8] Those firms include, in addition to Milbank, not only a leading bankruptcy firm (Docter, Docter & Salus) but also a leading government-contract-dispute firm (Howrey & Simon), hired as special counsel to represent the Debtor in the litigation of its contract dispute with DOJ (as distinguished from Milbank's employment to negotiate settlement of that dispute "at the highest levels"). The Debtor has also employed no less than three accounting firms; and the Unsecured Creditors' Committee has also retained prominent bankruptcy counsel. The potential for multiplication of effort and of expense is obvious.[9] Moreover, all or almost all of the Debtor's assets are encumbered as security for bank notes which no doubt contain fee-shifting clauses. In view of all these factors, and in view of the lack of concrete results achieved as a result of Milbank's efforts on the Debtor's behalf thus far, this Court will strictly limit the award to Milbank at this time, without prejudice to reconsideration (and indeed without prejudice to consideration of a "bonus" award) in the event of a successful conclusion to Milbank's efforts.

Specifically, this Court will allow at this time a top rate of $200 per hour and will adjust the other rates as follows: $210—adjusted to $165; $115—adjusted to $100; $60—adjusted to $50. In addition, the Court will reduce by one-quarter the resulting adjusted figure for time spent "in the initial phases of the Chapter 11 case," including time spent "reassuring" customers, suppliers and employees and time spent on "development and prosecution of initial urgent matters to the Court,"[10] i.e., the Debtor's "Emergency Motion for Authorization to Use Cash Collateral."[11] The Court notes that the written emergency motion was signed by the Debtor's bankruptcy counsel, not by Milbank. Also, the Court takes judicial notice that Debtor's bankruptcy counsel in this case is thor-

---

**8.** Its weighted average rate in this case is also significantly higher than the rate of at least one other major national firm that regularly appears before this Court.

**9.** The Court notes that the Debtor was represented by no less than four attorneys from two different law firms at the cash collateral hearing held the day after the Debtor filed its petition. Their combined hourly rate was *$645!*

**10.** Milbank's Application for Interim Compensation, filed March 22, 1985, pp. 4–8.

**11.** The Court will treat all time spent through February 14, 1985 (one week after the Debtor filed its petition), and only that time, as time spent on these matters, in the absence of more precise data.

oughly familiar with and well able to handle cash-collateral motions, and the cash collateral motion in this case did not appear to this Court to involve any especially difficult issues of fact or law. Similarly, reassuring third parties could in this Court's view more appropriately have been handled by the Debtor's management together with bankruptcy counsel, without the need for any substantial involvement by special counsel who are restricted by the terms of § 327(e) to employment "for a specified special purpose." Finally, the Court will disallow reimbursement of expenses for taxi fares and parking, in the absence of any indication that public transportation via the Washington metropolitan area's speedy, inexpensive, safe, new subway system was impractical.

NOW THEREFORE IT IS ORDERED that the application for interim compensation filed by Milbank, Tweed, Hadley & McCloy is disallowed in the amount of $9,580.19 of fees and is allowed in the amount of $18,316.06 of fees,[12] without prejudice to reconsideration of the disallowed portion of the application at or after the time of the confirmation hearing in this case; and it is further

ORDERED that the application is disallowed in the amount of $36.00 of expenses and allowed in the amount of $114.46 of expenses; and it is further

ORDERED, consistently with this Court's Orders allowing compensation to other law and accounting firms, and based on the Debtor's president's representations concerning cash flow, that the Debtor shall pay 40% of the fee allowance and all of the expense allowance forthwith; and it is further

ORDERED that the remainder of the fee allowance shall be paid by the Debtor in its discretion at such time as it shall determine based on its business judgment that it is in fact capable of paying the same; and it is further

ORDERED, consistently with this Court's Orders allowing compensation to other law and accounting firms, that the above allowances are without prejudice to the rights of any interested party to object on any basis to the foregoing allowances whether in connection with an application for final compensation or otherwise, and it is further

ORDERED, consistently with this Court's Orders allowing compensation to other law and accounting firms, that the foregoing allowances are without prejudice to the Court's authority to review and approve the ultimate compensation herein payable to Milbank, Tweed, Hadley & McCloy; and it is further

ORDERED, consistently with this Court's Order granting the motion filed by the Bank of Bethesda and the National Bank of Washington for clarification of

**12.** The computations are as follows:

| Name | Hours | Rate Allowed | Gross Fee | Hours Thru 2/14 | Gross Fee Thru 2/14 |
|------|-------|--------------|-----------|-----------------|---------------------|
| Richardson | 18.75 | $200 | 3,750.00 | 8.50 | 1,700.00 |
| Musselman | 1.25 | 200 | 250.00 | 1.25 | 250.00 |
| Gerstell | 58.50 | 165 | 9,652.50 | 41.25 | 6,806.25 |
| Gesner | 72.25 | 100 | 7,225.00 | 61.00 | 6,100.00 |
| Hoff-Patrinos | 8.50 | 100 | 850.00 | 8.50 | 850.00 |
| Shimkus | 6.50 | 50 | 325.00 | 6.50 | 325.00 |
| Waterbury | 7.25 | 50 | 362.50 | 7.25 | 362.50 |
| TOTAL | | | 22,415.00 | | 16,395.75 |

16,395.75 × 75% = 12,296.81.  22,415.00 − 16,395.75 = 6,019.25
+12,296.81

Total Amount Allowed:  18,316.06

this Court's Orders granting compensation to other law and accounting firms and the Debtor's opposition thereto, that this Order is conditional and without prejudice to the rights of the Bank of Bethesda and the National Bank of Washington; and it is further

ORDERED that this Court will give any request by the Debtor either to assume or to reject its executory contract with Milbank the strictest scrutiny, in order to ensure that the Debtor's decision in that regard is in the best interest of the estate.