In re ABBOTTS DAIRIES OF PENN-
SYLVANIA, INC., Jointly Administered
with: Abbotts Holding Co., Inc., Ab-
botts Realty, Inc., Pennbrook Foods
Co., Inc., the Pennbrook Corp., Debt-
ors.

Bankruptcy No. 84–02623G.

United States Bankruptcy Court,
E.D. Pennsylvania.

May 19, 1986.

As Amended June 26, 1986.

Wayne M. Thomas, Kohn, Savett, Marion & Graf, and Melvin Lashner, Melvin Lashner Associates, Philadelphia, Pa., for movant, Cumberland Farms Dairy, Inc.

Marvin Krasny, Barry D. Kleban, Adelman, Lavine, Krasny, Gold & Levin, Carl Fridy, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for the debtor, Abbotts Dairies of Pennsylvania, Inc.

J. Gregg Miller, M. Duncan Grant, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for ADC, Inc., Prospective Purchaser.

Melvin Beshore, Milspaw & Beshore, Harrisburg, Pa., for National Farmers' Organization, Inc.

Lawrence J. Lichtenstein, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for the Official Creditors' Committee for Abbotts Dairies, Inc.

Alexander N. Rubin, Jr., Eric M. Hocky, Rubin, Quinn & Moss, Philadelphia, Pa., for the Official Creditors' Committee for Pennbrook Foods Co., Inc.

Karen A. Overstreet, Duane, Morris & Heckscher, Philadelphia, Pa., for Fairmont PA. Holdings, American Financial Corp., secured creditor.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The issue confronting us in the case at bench is whether we should grant a motion to disqualify a debtor's counsel, which motion was filed by a thwarted purchaser of substantially all of the debtor's assets. For the reasons set forth below, we conclude that the motion should be denied.

The facts of this case are as follows:[1] Abbotts Dairies of Pennsylvania, Inc. ("Abbotts"), a producer and distributor of milk and dairy products, filed a petition for reorganization under chapter 11 of the Bankruptcy Code ("the Code") on August 10, 1984. That same day it also filed with the court an "Interim Agreement Concerning the Sale of Inventory and Lease of Certain Assets" ("the Interim Agreement") and an "Asset Purchase and Lease Agreement" ("the Purchase Agreement"). The documents had already been signed by the debtor and the prospective purchaser, ADC, Inc. ("ADC"). On notice to a few creditors a hearing was held that day on the debtor's motion to approve the Interim Agreement. On the basis of credible testimony that the value of the debtor's assets would diminish in the absence of our approval of the agreement, we granted the motion.

Notice was disseminated to all creditors of a hearing scheduled for September 12, 1984, for approval of the Purchase Agreement. At that hearing several prospective purchasers objected to approval of the agreement, but we overruled the objections as meritless and granted the motion for approval of the Purchase Agreement.

To the extent pertinent here, appeals of the order approving the Purchase Agreement were lodged by Cumberland Farms Dairy, Inc. ("Cumberland") and the National Farmers' Organization, Inc. ("NFO"). These parties did not obtain a stay pending appeal notwithstanding 11 U.S.C. § 363(m)[2], which is discussed *infra*. In

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

2. (m) The reversal or modification on appeal of an authorization under subsection (b) or (c)

of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authori-

the absence of a stay, Abbotts and ADC concluded the sale in September of 1984.

The district court granted Abbotts' motion for dismissal of the appeals on the basis that no stay had been obtained under § 363(m). The appellants thereupon sought redress with the United States Court of Appeals for the Third Circuit. That court reversed the district court on the ground that the absence of a bond pending appeal did not render the appeal moot under § 363(m) since the appellants had colorable grounds for arguing that ADC was not a good faith purchaser within the meaning of that section. *In Re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir.1986). The Court of Appeals remanded the matter to the district court with instructions that it be remanded to us for findings of fact including whether ADC was a purchaser in good faith and for value. On remand to us Cumberland has moved for the removal of the debtor's counsel on the ground that said counsel will be principal witnesses on the factual matters at issue.

Without risk of misadventure in the appellate court, we may safely say that attorneys are a cadre of professionals. Those of the profession who represent their clients zealously and competently, comprehend the irony that they are often the most likely targets of a motion to disqualify; opposing counsel has little desire to seek dismissal of a bumbling opponent. In the same way dissidents raise the spectre of the environmental protection laws in the face of road construction, counsel occasionally move to disqualify the opposition. The aspirations behind the rules often times becomes subverted in an effort to achieve less noble ends. Both the road constructor and the lawyer must successfully overcome the challenge if they are to continue.

The obstacles in the case at bench are found in Pennsylvania's Code of Professional Responsibility ("the CPR"). The CPR was promulgated by the Pennsylvania Supreme Court for the governance of counsel practicing in Pennsylvania's state courts. This same standard has been adopted by court rule in the United States District Court for the Eastern District of Pennsylvania. E.D.Pa.Civ.R. 14(IV)(B). This bankruptcy court, as a unit of the district court, likewise applies the provisions of CPR through E.D.Pa.Civ.R. 14(IV)(B). *In Re Philadelphia Athletic Club*, 20 B.R. 328 (E.D.Pa.1982). Original, but not exclusive power to enforce these rules, lies with this court. *Groper v. Taff*, 717 F.2d 1415, 1418 (D.C.Cir.1983).

■ In pertinent part the CPR states that:

DR 5–102 Withdrawal as Counsel When the Lawyer Becomes a Witness

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).[3]

---

zation and such sale or lease were stayed pending appeal.
11 U.S.C. § 363(m).

**3.** DR 5–101. Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment

(A) * * *
(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, ex-

cept that he may undertake the employment and he or a lawyer in his firm may testify:
(1) If the testimony will relate solely to an uncontested matter.
(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawer or his firm to the client.
(4) As to any matter, if refusal would work a substantial hardship on the client because of

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

DR 5–102. Under DR 5–102 a lawyer or his firm should cease representing a client if counsel "ought to be called as a witness on *behalf* of his client." DR 5–102(A) (emphasis added.) In applying DR 5–102(A), the court must decide whether the attorney is an "indispensible" witness who has "crucial" information which is possessed by none of the client's other witnesses. *Universal Athletic Sales Co. v. American Gym, Recreational and Athletic Equipment Corp.*, 546 F.2d 530, 538–39 n. 21 (3d Cir.1976), *cert. den.*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977).

■ A requirement for disqualification under DR 5–102(B) is that the lawyer's testimony "is or may be prejudicial to his client." For his testimony to be considered prejudicial, "the projected testimony of a lawyer or firm member must be sufficiently adverse to the factual assertions or account of events offered on behalf of his client, such that the bar or the client might have an interest in the lawyer's independence in discrediting the testimony." *Freeman v. Kulicke & Soffa Industries, Inc.*, 449 F.Supp. 974 at 977 (E.D.Pa.1978), *aff'd* 591 F.2d 1334 (3d Cir.1979). The party moving for disqualification of counsel "bears the burden of demonstrating specifically how and as to what issues in the case the prejudice will occur and that the likelihood of prejudice occurring is substantial." *Freeman*, 449 F.Supp. at 978.

■ Furthermore, DR 5–102(B) "was not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him as counsel." Official Notes, Code of Professional Responsibility, American Bar Association, DR 5–102(B), n. 31,

quoting *Galarowicz v. Ward*, 119 Utah 611, 620, 230 P.2d 576, 580 (1951); *Kroungold v. Triester*, 521 F.2d 763, 766 (3d Cir.1975) (approvingly quoting above quoted matter). "By misusing the advocate-witness prohibition, an attorney might elbow opposing counsel out of the litigation for tactical reasons." *Cottonwood Estates v. Paradise Builders*, 128 Ariz. 99, 624 P.2d 296, 302 (1981) (*en banc*). Nonetheless, any doubts should be resolved in favor of disqualification. *United States v. Peng*, 602 F.Supp. 298, 302 (S.D.N.Y.1985), *aff'd*, 766 F.2d 82 (2d Cir.1985).

■ After reviewing the facts of this case we conclude that the debtor's counsel should not be disqualified under DR 5–102(A) or (B). Evidence on the value of the assets sold in the transaction in question may be provided by experts in valuation, rather than the debtor's counsel. Likewise, testimony on whether ADC is a good faith purchaser may be elicited from the principals of ADC and the debtor, rather than counsel.

■ Cumberland alternatively asserts that disqualification of counsel is properly predicated on Canon 9 of the CPR which provides that:

A lawyer should avoid even the appearance of impropriety.

Canon 9. The courts have enforced this canon and have disqualified counsel when only the "appearance of impropriety" was implicated, in the absence of actual wrongdoing. *See, e.g., Richardson v. Hamilton Int. Corp.*, 469 F.2d 1382 (3d Cir.1972), *cert. den.*, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964. We find neither impropriety nor the appearance of impropriety and we therefore conclude that this basis for disqualification is without merit.

Our conclusion to deny disqualification is strongly supported by considerations of administration in the bankruptcy system for the following reasons. In its opinion, the Court of Appeals held "that when a bank-

---

the distinctive value of the lawyer or his firm as counsel in the particular case.

DR 5–101(B).

ruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser." *In Re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149–150 (3d Cir.1985). Section 363(b)(1) simply provides that, "The trustee [or debtor in possession],[4] after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." § 363(b)(1). Thus, every time the trustee or the debtor in possession intends to sell property of the estate, other than in the ordinary course of business, we must determine whether the prospective purchaser is acting in good faith. If we adopted the course suggested by the movant, disqualification of counsel for the trustee or the debtor in possession would be virtually mandatory any time a disgruntled party challenged an intended sale out of the ordinary course of property of the estate. Furthermore, this mandate would not be restricted to chapter 11 reorganizations, but would likewise apply to chapter 7 liquidations and to chapter 13 individual debt adjustments. The administration of bankruptcy would be severely hampered if counsel for the trustee or debtor in possession could be routinely disqualified simply because they sold property of the estate, particularly in light of the command of the Code that they are vested with the duty to sell such property when necessary. 11 U.S.C. § 704(1) (chapter 7), § 1123(b)(4) (chapter 11) and § 1303 (chapter 13, in which chapter the debtor, rather than the trustee, is vested with authority to sell property of the estate). Such a system of disqualification would be unworkable. This is not to suggest that disqualification is not occasionally appropriate, but simply to indicate that, in the ordinary course, disqualification is impracticable.

■ An order denying a motion to disqualify counsel is not appealable as a matter of right, *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 101 S.Ct. 669, 66

L.Ed.2d 571 (1981), while orders granting a motion to disqualify are appealable as a matter of right. *See, e.g. United States v. Hobson*, 672 F.2d 825, 826 (11 Cir.1982), *cert. den.*, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166.

We will, accordingly, enter an order denying the motion for disqualification.

---

**4.** Subject to exclusions not pertinent here, the debtor in possession has the rights and powers of a trustee. 11 U.S.C. § 1107.