**In re G & H STEEL SERVICE, INC., Debtor.**

**In re WHALEN ERECTING CO. OF OHIO, INC. d/b/a Whalen Erecting Co., Inc., Debtor.**

**In re FAIRFIELD CONSTRUCTORS, INC., Debtor.**

**Bankruptcy Nos. 86–05169S to 86–05171S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 18, 1987.

David R. Rosenfield, Philadelphia, Pa., for original movant Anthony Do'Ambra, etc.

Gary Schildhorn, Philadelphia, Pa., for defendant Ernest Dana.

Edward J. DiDonato, Philadelphia, Pa., for debtors.

Kenneth F. Carobus, Philadelphia, Pa., for Creditors' Committee.

Herbert A. Fogel, Broomall, Pa., Special Counsel.

J. Scott Victor, Philadelphia, Pa., for defendant Anthony Doria.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Before us is a Motion by the Defendants in a lawsuit initiated by the Debtors requesting us to vacate our Order appointing, as special counsel for the Debtors in these cases, an attorney who is admittedly not a "disinterested party" due to his close past relationship with the Debtors and whose alleged "intimate and involved" relationship with the Debtors allegedly may result in his being called as a witness by the Defendants. Finding that special counsel need not be "disinterested" and that the policy of allowing a litigant, as opposed to his opponent, to choose his counsel outweighs any ethical considerations requiring exclusion of the chosen special counsel here, we shall deny the Motion.

On May 28, 1987, we granted the Debtors' ex parte Application to Appoint Herbert A. Fogel, Esquire, formerly a United States District Judge (hereinafter referred to as "Fogel"), in this case as special counsel to the Defendants for the sole purpose of representing the three Debtors, whose estates are being jointly administered, in Adversary No. 87–0321S in this Court, a proceeding brought against the Defendants, former employees of the Debtors and a corporate entity which they formed, for damages resulting from alleged theft of services and loss of corporate opportunities. The only connection between Fogel

and the Debtors alleged in the original Application was that Fogel has been involved with the operations of the Debtors for several years and was familiar with the history surrounding the relationships between the Debtors and the Defendants.

On June 17, 1987, four of the six Defendants in the Adversary proceeding filed the instant Motion, and thereafter they were joined by the other Defendants. The Debtors answered, indicating their opposition to the Motion on July 2, 1987. A hearing was scheduled on July 14, 1987, but was continued to July 28, 1987, by agreement of the parties. On the latter date, a hearing at which Fogel was the sole witness was conducted.

At that hearing, it was established that Fogel had been a stockholder and officer of G & H STEEL SERVICES, INC., one of the Debtors, and of a subsidiary, Con-Tech Service Group, until February, 1986. Also, he is a guarantor and indemnitor of certain corporate obligations, along with other principals of the Debtors and one of the Defendants. A guaranty to Fidelity Bank provides that, if collateral is liquidated, it should be assigned to Fogel. There were and are several business transactions in which Fogel and principals of the Debtor are involved, and Fogel previously received office space and secretarial services for his private law practice from the Debtors.

The Defendants attempted to establish that Fogel had some significant role in the particular operations of the Debtors which are the subject of the lawsuit, but, although Fogel admitted having some knowledge of these operations and related events, and stated that he was "outraged" when he was informed of the Defendants' alleged conduct, the Defendants failed to establish that he was instrumental in these matters.

The hearing was attended by counsel for the Official Unsecured Creditors' Committee, as well as counsel for the Debtors and various counsel for the Defendants. The Committee's counsel supported the continued appointment of Fogel.

Progress on litigation of the underlying Adversary proceeding was halted in this Court by the alleged filing of a Motion to withdraw the reference of this proceeding to the district court by one of the Defendants, which all the other Defendants have joined. Although the Defendants' Brief further advises us that this Motion is pending before the Honorable John P. Fullam, Chief Judge of the District Court, and the Debtors, at the hearing, concurred with this recitation of its status, we note no such Motion on the Docket. Counsel all agreed that, even were the Adversary proceeding removed, we were obliged to resolve this Motion rather than the District Court, because it related directly to the main bankruptcy cases.

At the hearing, the Debtors conceded that Fogel was not a "disinterested person," as defined by 11 U.S.C. § 101(13)(D), as he clearly was, "within two years before the date of the filing of the petition, a director [or] officer ... of the debtor ...;" Further, they conceded their failure to totally comply with Bankruptcy Rule 2014, which requires that an application for employment of professional persons must state "all of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants." It is clear to us that the fact that Fogel was not a "disinterested person," and the specific reason why he did not enjoy this status, should have been disclosed in the Application.[1]

The operative provisions of the Code are 11 U.S.C. §§ 327(a), (e), which provide as follows:

Section 327. Employment of professional persons.

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that

---

1. We also note that the new version of Bankruptcy Rule 2014, in effect on August 1, 1987, requires that the *person employed* must file an affidavit setting forth all of the "connections" which must be disclosed under the Rule. We are not applying the new version of the Rule to this Motion.

do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

.    .    .    .    .

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed....

■ Our principal concern was whether, interrelating these two subsections of 11 U.S.C. § 327, the requirement of appointment of "disinterested persons" set forth in § 327(a) carried over to § 327(e). We noted that nothing in the language of § 327(e) implies that counsel appointed under that section may be exempted from the requirements of § 327(a), and that the prohibitions of § 327(a) appear to apply "[e]xcept as otherwise provided in this section." If this concern were well-placed, and "special counsel" within the scope of § 327(e) indeed had to be a "disinterested person," Fogel would of course have to be disqualified.

However, no authority supports this reading of § 327(e), and even the Defendants do not so argue. Collier specifically states that "special counsel" "need not be 'disinterested,' as is otherwise required by section 327(a), provided that the attorney represents or holds no interest adverse to the debtor or to the estate in the matter upon which the attorney is to be engaged." 2 COLLIER ON BANKRUPTCY, ¶ 327.-03[6], at 327–38 (15th ed. 1987). All of the cases that we were able to locate support this interpretation of § 327(e). *See In re Leisure Dynamics, Inc.*, 32 B.R. 753, 755 (D.Minn.1983), *aff'd*, 33 B.R. 121 (D.Minn. 1983); *In re Fondiller*, 15 B.R. 890, 892 (9th Cir. BAP 1981); *In re Inslaw, Inc.*, 55 B.R. 502, 504 (Bankr.D.D.C.1985); *In re Sally Shops, Inc.*, 50 B.R. 264, 265–67

(Bankr.E.D.Pa.1985); *In re Roberts*, 46 B.R. 815, 824 (Bankr.D.Utah 1985); *In re Iorizzo*, 35 B.R. 465, 468 (Bankr.E.D.N.Y. 1983); and *In re Hemstead Realty, Inc.*, 34 B.R. 624, 626 (Bankr.S.D.N.Y.1983). Therefore, we conclude that our initial concern that special counsel need be "disinterested" was not well-placed, and that Fogel should not be disqualified on that basis.

■ Rather than relying on § 327(a), the Defendants suggest that Fogel's appointment fails to meet either prong of the following proposed two-pronged test: (1) Retention should be in the best interests of the estate; and (2) Counsel cannot have any interest adverse to the estate. The invocation of this test, while nowhere provided for in § 327(e) or anywhere else in § 327, nevertheless seems logical. Therefore, *arguendo*, we will assume that these two requirements must be met.

The first prong is alleged by the Defendants to be lacking because of the lack of proof on this point, and on the basis of the holding in *In re Bohack Corp.*, 607 F.2d 258 (2d Cir.1979).

We disagree that the Debtors have failed to present sufficient evidence that Fogel's employment would be in the estate's best interest. The mere fact that the Debtors chose him, and the Creditors' Committee concurred in this choice, is sufficient, in our view, to meet this requirement. It would be absurd to posit that a party wishing to employ counsel must provide affirmative, independent evidence of the efficacy of counsel to be able to hire same. The fact that the Debtors' opponents are pressing this Motion, and thus attempting to get Fogel off the case as opposing counsel, is further testimony to his perceived efficacy in the estate's interests.

The *Bohack* case persuasively rebuts the Debtors' argument that the Defendants have no standing to raise the instant motion. 607 F.2d at 261–62. However, the facts of that case are enormously diverse from those here. In that case, an action was instituted against certain corporate directors of the debtor to recover damages for alleged mismanagement. Omitted as a

defendant was the chairman of the debtor's board of directors. The firm of which appointment as special counsel to litigate the case was sought had previously represented the debtor; its senior partner was himself a board member; and the said senior partner continued to have a close personal and business relationship with the board chairman.

Clearly, these facts put counsel directly in the midst of the very controversy in issue in the lawsuit. Special counsel was a member of and was closely related to the very board of directors whose differences led to the lawsuit, and it appeared, at least to the Court of Appeals, that a party who potentially could have been co-defendant was being shielded by special counsel. Here, there is no allegation that Fogel's appointment is shielding either himself or anyone else from joinder in the lawsuit. The record also lacks sufficient evidence that Fogel was, to any significant degree, a player in the underlying controversy. As the *Iorizzo* opinion points out, *Bohack*'s result depends on the perceived conflict of interest between counsel and the litigants. 35 B.R. at 468–69. Here, the alleged close relationship of Fogel to the debtors does not raise the spectre of a conflict, but rather suggests that he will be an unusually warm advocate for the Debtors.

Therefore, we conclude that the reasoning of the *Bohack* case is inapplicable and that the Debtors have established that Fogel's appointment is in the best interests of the estate.

The Defendants claim that the second prong of § 327(e) is not met, in that Fogel allegedly has "interests adverse" to the Debtors on two general grounds: (1) He has potential claims against, and liabilities to, the Debtors; and (2) He may be called as a witness by the Defendants. The latter ground was amplified at argument by a contention that, if the Defendants would in fact call Fogel, he would be disqualified and the Debtor would have the added financial burden of hiring new counsel.

At the outset, we are struck with the hyprocrisy in hearing such "concerns" with the cause of the Debtors coming from the mouths of the Defendants. Obviously, they are not opposing Fogel's retention out of concern for the Debtors, but out of their own concern that Fogel will be formidable adversary.[2]

Regarding the potential financial conflicts between Fogel and the Debtors arising from the guaranty and indemnity agreements between them, a potential claim of one of the Debtors against him for the subscription price of stock, and Fogel's alleged involvement with Con-Tech, which may owe certain amounts to the Debtors, we would make three comments. First, these hypothecized conflicts are highly speculative. There is no evidence that any of these potential claims in any way constitute ripened claims. Secondly, these matters have no connection with the controversy at hand in the Adversary proceeding. And, thirdly, these conflicts, assuming *arguendo* their existence and significance, would have no perceptable effect except to heighten Fogel's interest in having the Defendants prevail in this action.

In support of their final contention that Fogel's potential status as a witness for the Defendants creates a disqualifying conflict of interest, the Defendants quote Disciplinary Rule (hereinafter referred to as "DR") 5–102, which provides as follows:

DR 5–102. Withdrawal as Counsel When the Lawyer Becomes a Witness

"as other courts have done, we note that 'it is always rather anomalous that the defendants should concern themselves with the adequacy of plaintiff's representation of the class.' *Fox v. Prudent Resources Trust*, 69 F.R.D. 74, at p. 79 (E.D.Pa.1975); *see also, Umbriac v. American Snacks, Inc.*, 388 F.Supp. 265, 275 E.D.Pa. 1975)."

**2.** This observation is reminiscent of the statement, quoted by us in *In re Fleet, Fleet v. United States Consumer Council, Inc.*, 76 B.R. 1001, 1010 (Bankr.E.D.Pa.1987), of Judge Davis in *Muth v. Dechert, Price & Rhoads*, 70 F.R.D. 602, 604 (E.D.Pa.1976), concerning objections by defendants in a class action to a contention that the class plaintiffs' counsel could provide adequate representation to the class:

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or his lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

There is no contention that the Debtors intend to call Fogel as a witness. Therefore, the mandate of DR 5–102(A) that a lawyer "shall withdraw" in such a circumstance is inapplicable. By way of contrast, all that is purportedly applicable is DR 5–102(B), which expressly provides that the lawyer "may continue the representation until it is apparent that his testimony is or may be prejudicial to his client." Thus, in this circumstance, representation need not cease until the lawyer's testimony becomes detrimental to his client. All that presents itself here is the Defendants' bald assertion that they may call Fogel as a witness and no indication whatsoever as to how his testimony would adversely affect the Debtors.

It is well-established that DR 5–102(B) " 'was not designed to permit a lawyer to call opposing counsel as a witnes and thereby disqualify him as counsel.' " *Kroungold v. Triester*, 521 F.2d 763, 766 (3d Cir.1975) (quoting a Comment by the Special Committee for the Evaluation of Ethical Standards, which drafted the Disciplinary Rules). Opposing parties have the burden, and we believe it to be a stiff burden, of proving that retention of chosen counsel by the adverse party would violate the Disciplinary Rules. *See, e.g., Zions First Nat'l Bank v. United Health Clubs, Inc.*, 505 F.Supp. 138, 140 (E.D.Pa.1981)

(per LUONGO, CH. J.); *In re Abbotts Dairies of Pennsylvania, Inc.*, 61 B.R. 156, 159–60 (Bankr.E.D.Pa.1986) (per GOLDHABER, CH. J.); and *Sally Shops, supra*, 50 B.R. at 267–68 (per KING, J.). We totally agree with the observation of former Chief Judge Goldhaber of this Court that, to carry the concept of disqualification upon "the appearance of impropriety" to the extent of requiring disqualification whenever a party threatened to call a debtor's counsel as the party's own witness would "severely hamper" administration of estates and "would be unworkable." *Abbotts Dairies, supra*, 61 B.R. at 159, 160. The appointment here is in distinct contrast to that ultimately disapproved in *In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328 (E.D.Pa.1982), relied upon by the Defendants. There, proposed *general* counsel for the Trustee had a prior involvement with one of two factions struggling for control of the Debtor, and was disqualified under § 327(a).

We believe that disqualification of Fogel, on the basis of the record here, is clearly not required by DR 5–102(B) or any other disciplinary rule. We again observe that Fogel's involvement with the Debtor creates additional incentives for him to provide vigorous advocacy on their behalf. Certainly, defendants to a lawsuit should not be able to choose or even veto the plaintiffs' choice of counsel in all but the most extraordinary situations. The instant record falls far short of a showing of any such a situation.

We therefore must proceed to deny the Defendants' Motion, and allow Fogel to continue to serve as special counsel in Adversary No. 87–0321S, whether here or in the district court. We do, however, add two comments. First, we do not condone the Debtors' disregarding of Bankruptcy Rule 2014, and repetition of such conduct would warrant sanctions. We admit that this element weighed heavily on our initial impression that § 327(a) did apply here and the Debtors chose to obfuscate this issue by failing to comply therewith. Secondly, the vigor and potential financial interest of Fogel in the outcome may justify a reduc-

tion in any subsequent request for compensation from the Debtors' estates on his part. We trust that this factor will be considered by Fogel in any future fee Applications.

An Order consistent with our conclusions expressed herein shall be entered.