### In re TIDEWATER MEMORIAL HOSPITAL, INC., Debtor.

**Bankruptcy No. 88–01656–RT.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Dec. 29, 1989.

See also, Bkrtcy., 106 B.R. 885.

James J. Burns, Williams, Mullen, Christian & Dobbins, P.C., Richmond, Va., for Crews & Hancock.

Augustus C. Epps, Jr., Christian, Barton, Epps, Brent & Chappell, Richmond, Va., for debtor.

Linda W. Coppinger, Office of the U.S. Trustee, Norfolk, Va.

Crews & Hancock, Richmond, Va.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

The Court has for consideration the debtor's application for the employment of the

law firm of Crews & Hancock as special counsel pursuant to 11 U.S.C. § 327(e), along with this law firm's application requesting the Court's approval of compensation for services rendered as special counsel to the debtor. The debtor's application was filed with the Court on March 17, 1989, and requests the Court to appoint the counsel *nunc pro tunc*, as of July 29, 1988, the date the chapter 11 petition was filed.

The United States Trustee objects to a retroactive appointment and to the allowance of compensation, primarily on the grounds that the applicant law firm does not meet the qualifications for appointment under § 327(e) as special counsel. In addition, the United States Trustee argues that if the Court allows the appointment the compensation requested should be reduced because the attorneys' application is overly vague in describing services and also appears to include charges that duplicate charges by the debtor's bankruptcy counsel.

The Court conducted a hearing on the applications at which evidence and argument were received along with a memorandum of law in support of the applications.

For the reasons stated in this opinion the application for appointment of the special counsel to debtor is denied. Consequently, the application for compensation is denied.

### Findings Of Fact

The debtor filed a chapter 11 petition July 29, 1988, and operated its hospital in Tappahannock, Virginia, as debtor in possession. A plan of reorganization was confirmed by the Court on April 20, 1989.

Crews & Hancock ("Crews") is a nineteen lawyer firm specializing in hospital and health care law. The firm, which served as counsel to the debtor for over seven years prepetition, is among the twenty largest unsecured creditors of the debtor. Crews has represented a number of other health care providers including Riverside Hospital or its subsidiaries, St. Mary's Health Corporation and St. Mary's Hospital, Virginia Insurance Reciprocal and Mary Washington Hospital. One of the firm's principals is a board member of St. Mary's Health Corporation.

Although debtor retained separate bankruptcy counsel to represent it in the chapter 11 case, the debtor's management and bankruptcy counsel believed it important to continue the services of Crews as special counsel for the purpose of representing debtor in the solicitation and negotiation of proposals for the sale or reorganization of the hospital and for other specialized advice.

The named members of the firm, Messrs. Crews and Hancock, are shareholders and directors of Diamond Healthcare Corporation ("Diamond") and directors of Healthcare Associates of Tappahannock, Inc. ("Healthcare"). Diamond, the sole shareholder of Healthcare, is a specialist in psychiatric and chemical dependency care. Prior to the commencement of the chapter 11 case, Diamond had contracted to provide management services to debtor, and these services were continued for a time postpetition.

In 1987, the debtor was experiencing financial problems and requested the assistance of Crews in finding a suitable purchaser of the hospital facility. The law firm brought in Riverside Hospital which negotiated to take over the debtor's operations. Riverside had separate counsel in these negotiations, and Crews represented the debtor. Although Riverside remained interested in acquiring the debtor, no agreement was reached between the parties before financial considerations forced debtor to file its bankruptcy petition.

After the bankruptcy petition was filed, Crews was instrumental in commencing separate negotiations for acquisition of the debtor with St. Mary's Hospital and subsequently with Mary Washington Hospital. In these negotiations, the firm represented the debtor as well as both St. Mary's and Mary Washington.

After St. Mary's dropped out of the bidding, Mary Washington Hospital continued for a time to pursue the acquisition. One of its negotiating requirements was that Diamond was to continue providing services to the new hospital entity which would

be formed. Under Mary Washington's proposal, Diamond would become a member of a management company as a 12½ percent general partner with Mary Washington.

Ultimately, Riverside Hospital increased its bid for the debtor; this bid was accepted and forms the basis for the debtor's confirmed plan of reorganization.

The application of the debtor to appoint Crews special counsel was filed· with the Court on March 17, 1989, and contained the following statement of the purposes of this employment:

> 6. The professional services which were to be and which were rendered to the Debtor by Crews in connection with this case were to advise and represent the Debtor with respect to the solicitation, negotiation, evaluation, analysis and recommendation of proposals for the sale, liquidation or reorganization of all or some portion of the assets of the Debtor, and other specialized advice and guidance with respect to the Debtor's financial and operational matters and proceedings within this Chapter 11 case.

The law firm's application for compensation was filed on April 5, 1989, and requested compensation for postpetition legal services of $19,640.00 plus $75.46 reimbursement of expenses; according to the application, December 14, 1988, was the last date upon which services were performed for the debtor.

### Discussion And Conclusions

This case presents two most troublesome issues: A request for retroactive appointment of counsel combined with the consideration of whether the counsel's varied interests, including representation of other clients, creates a conflict of interest which precludes the firm's employment as counsel.

The employment of professionals is provided for in 11 U.S.C. § 327. Section 327(a), the most commonly applied employment provision in chapter 11 cases, authorizes employment by the trustee or debtor in possession of attorneys and other professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons". 11 U.S.C. § 327(a) (1988); 11 U.S.C. § 1107(a) (1988).

In the present matter, Crews seeks employment as special counsel to the debtor as authorized by 11 U.S.C. § 327(e) which provides as follows:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e) (1988).[1]

It is to be noted that while subparagraphs (a) and (e) of § 327 are somewhat similar, § 327(e) omits the language of § 327(a) requiring that the professional be a "disinterested person".

Effectively supplementing § 327, Bankruptcy Rule 2014(a) provides:

> *Application for and Order of Employment.* An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327 or § 1103 of the Code shall be made only on application of the trustee or committee, stating the specific facts showing the necessity for the employment, the name of the person *to be employed,* the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any

---

1. Under § 1107(a), the debtor in possession has the same powers as the trustee. 11 U.S.C. § 1107(a) (1988).

other party in interest, their respective attorneys and accountants.

Bankr.R. 2014(a) (emphasis supplied).

██ The provisions of § 327(a) and (e) combined with Rule 2014(a) seem literally to require an application and order of appointment prior to the employment of the counsel. And as illustrated by numerous decisions which have considered retroactive appointment of professionals, an attorney or other professional may not be compensated in a bankruptcy case unless appointed by order of the court. *See In re Mork,* 19 B.R. 947 (Bankr.D.Minn.1982).

However, this is one of those areas of bankruptcy where literal compliance with the law has the potential to produce an unfair hardship. A court ordinarily does not wish to deny compensation to a competent professional who performs valuable service to the bankruptcy estate; it is therefore understandable that most court decisions have recognized the authority of the bankruptcy court under appropriate circumstances to retroactively appoint professionals who fail to obtain prior court approval of employment.[2]

However, as pointed out in the memorandum of law filed in support of Crews' position, courts have divided on the nature of circumstances which will support a retroactive appointment. The decisions take two general points of view.

(1) Some courts have taken a very restrictive position, denying late employment requests except upon extraordinary circumstances such as hardship beyond the pro-

fessional's control. *See, e.g., In re F/S Airlease II, Inc.,* 844 F.2d 99 (3rd Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988); *In re Arkansas Co., Inc.,* 798 F.2d 645 (3rd Cir.1986); *In re Aladdin Petroleum Co.,* 85 B.R. 738 (Bankr.W.D.Tex.1988); *In re Chamberlin Corp.,* 53 B.R. 764 (Bankr.M.D.Fla.1985).[3]

(2) Another line of decisions reflects a rather more lenient view, and in some instances retroactive appointment is allowed based upon concepts amounting to oversight and excusable neglect. *See In re Triangle Chemicals, Inc.,* 697 F.2d 1280 (5th Cir.1983); *In re Crest Mirror and Door Co., Inc.,* 57 B.R. 830 (Bankr. 9th Cir.1986); *Mitchell v. American Appraisal Co. (In re Coast Trading Co., Inc.),* 62 B.R. 664 (Bankr.D.Or.1986); *In re Freehold Music Center, Inc.,* 49 B.R. 293 (Bankr.D.N.J.1985); and *In re Twinton Properties Partnership,* 27 B.R. 817 (Bankr.M.D.Tenn.1983).

██ Many of the cases on this issue use the term, "nunc pro tunc", to describe the retroactive approval of an application for employment. However, to be technically precise, "nunc pro tunc" is inappropriate in this circumstance since this term describes a court order which records a previous but unrecorded action of the court. Strictly speaking, a nunc pro tunc order does not "supply an omission to make an order but only an omission in the record of the order." *In re Mork,* 19 B.R. at 949; *cf. In re Laurent Watch Co., Inc.,* 539 F.2d 1231 (9th Cir.1976).[4]

---

**2.** In view of the bankruptcy code and rules, these decisions are subject to question, and in fact a few courts have applied a per se rule denying any retroactive appointment. *See Albers v. Dickinson,* 127 F.2d 957 (8th Cir.1942); *In re Futuronics Corp.,* 655 F.2d 463 (2d Cir.1981), *cert. denied,* 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *In re Calpa Products Co.,* 411 F.2d 1373 (3rd Cir.1969). *See also* Grensky, *The Problem Presented By Professionals Who Fail To Obtain Prior Court Approval Of Their Employment Or Nunc Pro Tunc Est Bunc,* 62 The Am.Bankr.L.J. 185 (Spring 1988).

**3.** Because a request for retroactive approval of employment can place the court in an unwanted and uncomfortable position, it has been reasoned that the adoption of a seemingly harsh

standard will encourage professionals to comply with the statutory scheme for prior appointment. *See In re Aladdin Petroleum Co.,* 85 B.R. at 738, 740.

**4.** I have found in this district that many chapter 11 debtors' counsel in applying for employment routinely provide for appointment "nunc pro tunc" in the proposed order of employment. Routinely, I strike this term from the order as entered. If there has been a delay in submitting the application which suggests that a retroactive appointment is desirable, it should be considered only on notice and a hearing. *See Credit Alliance Corp. v. Boies (In re Crook),* 79 B.R. 475, 477 (Bankr. 9th Cir.1987); *In re Crest Mirror and Door Co., Inc.,* 57 B.R. 830 (Bankr. 9th Cir.1986). It has been suggested that a reason-

The Court has found but one reported bankruptcy decision in this district on the issue of retroactive employment. In *In re King Electric Co., Inc.,* 19 B.R. 660 (E.D. Va.1982), District Judge Warriner reversed the bankruptcy court's denial of a request for retroactive appointment of the debtor's counsel. The decision was based primarily upon the general equitable powers of the bankruptcy court and the district court's conclusion that the counsel had performed valuable services to the debtor and no party had been prejudiced by counsel's seven month delay in applying for appointment.

Although a somewhat liberal standard seems to have been applied in *King Electric* to allow the counsel's late appointment, the decision provides little guidance for application to different factual situations. Subsequent to this decision, however, a number of courts have considered the issue, and useful guideline tests have been formulated.

Bankruptcy Judge Lundin in the often cited case of *In re Twinton Properties Partnership,* 27 B.R. at 819–20, suggested a nine part test to assist the court in deciding the issue of retroactive appointment of professionals.[5]

More recently, Judge Hess in *In re Coast Trading Company, Inc.,* 62 B.R. at 665, applied a more limited test. As observed by Judge Hess, the problem requires a case by case analysis, and it is difficult to formulate a set of tests that will resolve the issue in every case. In *Coast Trading,* the court focused on two questions: (1) Did the professional satisfactorily explain the failure to obtain prior approval by the court? and (2) Did the professional meet the requirements of § 327 and Bankruptcy Rule 2014(a) aside from the failure to timely obtain court appointment? 62 B.R. at 667.

For purposes of the instant case, the two tests used by the Court in *Coast Trading* will be sufficient.

REASONS GIVEN FOR DELAY IN APPLYING FOR EMPLOYMENT.

■ At hearing, a principal of Crews testified that there were three basic reasons why his firm delayed requesting approval of its employment as special counsel:

(1) At the time the chapter 11 petition was filed there was an "awful lot of activity", and the employment application was put on the "back burner".

(2) The firm had not previously represented a client in bankruptcy, and they did not appreciate the significance of the appointment.

(3) The firm had concerns over its various interests in the case and the "formatting" of its application for employment by the debtor.

The attorney witness acknowledged he had been advised by the debtor's bankruptcy counsel at the outset of the case that court approval of the employment was required. His testimony reveals that the at-

able time for submission of an application for employment is within 30 days after the filing of the bankruptcy petition. *In re Martin,* 102 B.R. 653 (Bankr.W.D.Tenn.1989).

5. Judge Lundin's tests are:
1. The debtor, trustee or committee expressly contracted with the professional person to perform the services which were thereafter rendered;
2. The party for whom the work was performed approves the entry of the *nunc pro tunc* order;
3. The applicant has provided notice of the application to creditors and parties in interest and has provided an opportunity for filing objections;
4. No creditor or party in interest offers reasonable objection to the entry of the *nunc pro tunc* order;

5. The professional satisfied all the criteria for employment pursuant to 11 U.S.C. § 327 (West 1979) and Rule [2014(a) ] of the Federal Rules of Bankruptcy Procedure at or before the time services were actually commenced and remained qualified during the period for which services were provided;
6. The work was performed properly, efficiently, and to a high standard of quality;
7. No actual or potential prejudice will inure to the estate or other parties in interest.
8. The applicant's failure to seek pre-employment approval is satisfactorily explained; and
9. The applicant exhibits no pattern of inattention or negligence in soliciting judicial approval for the employment of professionals. 27 B.R. at 819–20.

torney realized around the beginning of 1989 that the firm had not filed its application for appointment. Even so, the application was not filed until March 17, 1989, some two and one half months later and at a time when the debtor's plan of reorganization was well along the process of confirmation.[6]

The most troubling of counsel's reasons for the delay in having the employment application submitted concerns the problems in "formatting" the application. In other words, it may be inferred that the firm well knew its various interests were subject to question and might be difficult to present in such a way as to avoid the questions. This in turn suggests further delay in requesting the Court's approval while the firm retained other counsel to represent it on the late approval of employment.

The Court concludes that Crews' reasons for not obtaining prior approval of its employment do not justify a retroactive employment order. The reasons for delay, if viewed in the most favorable light, might be considered an oversight. Even so, the Court finds this an unsatisfactory basis for retroactive approval under the circumstances here.

QUALIFICATIONS OF LAW FIRM TO SERVE AS SPECIAL COUNSEL TO THE DEBTOR PURSUANT TO § 327(e).

Although the ruling above makes it unnecessary to consider the counsel's eligibility to serve as special counsel to the debtor, the Court will nevertheless briefly consider and rule on this issue also.

■ In order to qualify for a retroactive order of employment, Crews must demonstrate that it is eligible for the appointment pursuant to § 327(e) which requires that debtor's special counsel "not represent or hold any interest adverse to the debtor or to the estate with respect to the matter" for which counsel is employed.

As pointed out above, § 327(e) does not require special counsel to be a "disinterest-

ed person" as required for professionals appointed under § 327(a). It is generally held that when read in conjunction with the § 101(13) definition of a "disinterested person", the disinterestedness requirement of subparagraph (a) precludes a law firm which is a creditor from employment as general counsel to a chapter 11 debtor in possession. *See In re Watervliet Paper Co., Inc.*, 96 B.R. 768 (Bankr.W.D.Mich. 1989); *In re Roberts*, 75 B.R. 402 (D.Utah 1987).

■ A purpose of § 327(e) is to allow counsel who cannot meet the disinterestedness requirement of § 327(a) nevertheless to render valuable services to the debtor in matters where counsel has no adverse interest. § 327(e) is specific, however, in prohibiting special counsel from representing the debtor "in conducting the case". 11 U.S.C. § 327(e) (1988).

As set out in the facts section of this opinion, the debtor's application for employment of Crews states that the services which were required of the firm included assisting the debtor with its plan of reorganization. Evidence at hearing revealed that the firm did perform services in this regard.

The compensation statement filed in support of the Crews appointment as special counsel reveals: (1) that the firm's principals held interests in Diamond Health Care Corporation which had provided management services to the debtor both prepetition and postpetition, including assisting in developing a plan of reorganization, (2) that the firm was among the top 20 creditors of the debtor and (3) that the firm represented another of the top 20 creditors.

Not revealed in the compensation statement but brought out by the candid testimony of its principal at hearing, Crews represented both St. Mary's and Mary Washington Hospitals in negotiations aimed at the acquisition of the debtor or its assets by one of these entities as part of a plan of reorganization. In these negotiations, the firm also represented the debtor,

---

**6.** By order of the Court entered February 2, 1989, a hearing on the plan of reorganization

was scheduled for March 20, 1989.

although the witness stated that the debtor was not charged for these particular services. The Mary Washington proposal included having Diamond become part of the management team of the reorganized hospital.

■ Since Crews represented the debtor in the reorganization process, there is a serious question at the outset of the law firm's eligibility to serve as special counsel, even aside from any conflicts issue. *Collier On Bankruptcy* suggests that the "special purpose" to be served by counsel appointed under § 327(e) must not be related to the debtor's reorganization since this is tantamount to representing the debtor in the conduct of the case. 2 King *Collier On Bankruptcy*, ¶ 327.03, p. 327–50 (15th ed. 1988) (citing *In re McGrath Mfg. Co.*, 95 F.Supp. 825 (D.Neb.1951). In this Court's view, since a debtor's reorganization is the principal purpose of the chapter 11 case, counsel who cannot meet the disinterestedness standard of § 327(a) should not be able to bypass this requirement through employment as special counsel.

■ The problem here is compounded by the more serious fact that Crews represented both the debtor and two other hospitals who were competing in the negotiations to acquire the debtor. The acquisition of the debtor's hospital facility was, of course, the plan of reorganization in this case, albeit under the confirmed plan debtor was acquired by a third entity.

The law firm's witness stated that he had discussed on numerous occasions with the debtor's board of directors "my predicament" in being an unsecured creditor and continuing to represent the hospital. He had taken the position that the firm's representation would continue only so long as its goals were identical to those of the hospital's board, which were to see that all of the debtor's unsecured creditors were paid in full. The witness stated that the firm had been very careful not to take any position adverse to the hospital.

The Court notes that no evidence has been presented that Crews as special counsel took any position adverse to the debtor. Moreover, debtor supports the counsel's appointment and application for compensation.

While a large number of bankruptcy court decisions have considered conflict issues involving appointment under § 327(a), a relatively few cases have considered the issue of special counsel conflicts under § 327(e). *Film Ventures Int'l, Inc. v. Asher (In re Film Ventures International, Inc.)*, 75 B.R. 250 (Bankr. 9th Cir.1987); *In re Automend, Inc.*, 85 B.R. 173 (Bankr.N. D.Ga.1988); *In re Stateside Pools, Inc.*, 79 B.R. 312 (Bankr.S.D.Ohio 1987); *In re G & H Steel Service Inc.*, 76 B.R. 508 (Bankr.E. D.Pa.1987); *In re Marine Power & Equipment Co., Inc.*, 67 B.R. 643 (Bankr.W.D. Wash.1986); *In re NRG Resources, Inc.*, 64 B.R. 643 (W.D.La.1986); *In re Inslaw, Inc.*, 55 B.R. 502 (Bankr.D.C.1985). Unfortunately, no general rule of simple application can be gleaned from the decisions, and each case must finally rest on its own facts.

■ The Court concludes that Crews' various interests and post petition representations must prevent the firm's employment as special counsel. Although no evidence has been presented in this case that the firm in its double representations took an interest adverse to either side, the Court considers such evidence unnecessary.[7] In bankruptcy, there is an inherent conflict in the representation of both sides to an acquisition of the debtor's assets. See *Parker v. Frazier (In re Freedom Solar Center, Inc.)*, 776 F.2d 14.(1st Cir.1985). This type of double representation can be allowed, if at all, only under the strictest adherence to the statute and regulations.[8]

---

**7.** Not only did the law firm represent two hospitals which sought to acquire the debtor, under the proposals of one of these hospitals (Mary Washington), a new hospital entity was to be formed in which Diamond Healthcare Corporation was to retain an ownership interest. The two named principals of the law firm were shareholders and directors of Diamond.

**8.** There is an apparent division among reported decisions concerning whether there must be an actual conflict of interest to disqualify a professional as opposed to a potential conflict. See,

It is not the purpose of this opinion to castigate Crews or the debtor. No doubt the law firm performed valuable services in the chapter 11 case. And the Court has no reason to doubt the testimony of its principal that by presenting additional parties in the negotiations to acquire debtor, the law firm may have been instrumental in raising the bid of Riverside Hospital.

Nevertheless, the conclusion cannot be avoided that Crews' other interests and representations should have been disclosed to the Court before these services were rendered to the debtor in a chapter 11 case. The circumstances here present a perfect example of why professionals are required to be appointed before commencing employment under § 327.

A separate order will be entered denying the application for appointment of Crews as special counsel and denying the law firm's application for compensation.

for example, *H & K Developers v. Waterfall Village of Atlanta, Ltd. (In re Waterfall Village of*

*Atlanta, Ltd.),* 103 B.R. 340 (Bankr.N.D.Ga. 1989).